736 A.2d 564

COMMONWEALTH of Pennsylvania, Appellee,

v.

Jesse D. LANTZY, Appellant.

Supreme Court of Pennsylvania.

Submitted Feb. 10, 1999.

Decided July 7, 1999.

Bruce F. McKenrick, McKenrick & McKenrick, Ebensburg, for Jesse D. Lantzy.

David Tulowitzki, Dist. Atty., Christian A. Fisanick, Chief Deputy, for Com.

Rebecca D. Spangler, Asst. Dist. Atty., amicus curiae for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

*OPINION*

SAYLOR, Justice.

We allowed appeal to consider Appellant's request for restoration of his right to file a direct appeal. The case presents the threshold issue of whether relief is available under the Post Conviction Relief Act on a prisoner's claim of ineffective assistance of counsel for failing to perfect a direct appeal following a judgment of sentence.

On September 3, 1992, Appellant, Jesse D. Lantzy ("Lantzy"), entered pleas of guilty to theft, receiving stolen property and unauthorized use of an automobile. Thereafter, on July 20, 1993, the trial court imposed an aggregate sentence of 5 years 11½ months' to 11 years 11 months' imprisonment for these offenses. Lantzy filed timely post-sentence motions seeking, among other things, to withdraw his guilty plea and have his sentence modified. He also filed a timely notice of appeal with the Superior Court. The trial court scheduled a hearing to entertain Lantzy's motions, but did not expressly grant reconsideration or vacate its previous judgment of sentence.

In the meantime, Lantzy's counsel negotiated a reduced sentence of four to eight years' incarceration, in exchange for Lantzy's payment of $2,500 in restitution and his withdrawal of his appeal and post-sentence motions. Thus, at the hearing originally scheduled to entertain post-sentence motions, the trial court approved the agreement and imposed the modified sentence. Plea counsel then withdrew Lantzy's direct appeal pursuant to the agreement.

Within the period that would ordinarily be allowed for seeking appellate review of the modified sentence, Lantzy, acting *pro se*, again filed post-sentence motions and a notice of appeal with the Superior Court, seeking to challenge the modified sentence. After the trial court denied the motions, the Superior Court quashed the appeal and reinstated Lantzy's original sentence. *See Commonwealth v. Lantzy ("Lantzy I")*, 439 Pa.Super. 669, 653 A.2d 1301 (1994)(table), *appeal denied*, 540 Pa. 639, 659 A.2d 558 (1995). In its memorandum

opinion, the Superior Court explained that the trial court's jurisdiction over the sentencing issue lapsed after it failed to expressly grant reconsideration or vacate its original sentence within thirty days. *See* 42 Pa.C.S. § 5505; Pa.R.Crim.P. 1410(B)(3); Pa.R.A.P. 1701(b)(3)(ii). *See generally Commonwealth v. Gordon*, 329 Pa.Super. 42, 477 A.2d 1342 (1984). Therefore, according to the Superior Court, the trial court's imposition of the reduced sentence was a nullity, and the Superior Court lacked jurisdiction to review the merits of the appeal from that sentence.

Because the Superior Court declined to reinstate Lantzy's original appellate rights, Lantzy was left with his original sentence, but without the present ability to challenge that sentence or his conviction by means of direct appeal.

On April 16, 1996, Lantzy filed a petition under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–46 (the "PCRA"), and counsel was appointed. In his petition, Lantzy alleged, *inter alia,* that he was innocent and that plea counsel was ineffective for advising him to withdraw his original appeal and post-sentence motions in exchange for a modified sentence that was ultimately vacated. At the subsequent evidentiary hearing, Lantzy clarified for the record that he believed that plea counsel had done a "good job," and that the reduced sentence of four to eight years was "a good deal at the time." He sought to appeal, however, because, he asserted, the sentencing court had excluded favorable character evidence which, if admitted, might have moved that court to either impose a more lenient sentence or allow him to participate in a work release program. There is scant information in the record, however, to describe the claims Lantzy intended to pursue before the Superior Court when he filed his original notice of appeal after the first sentence was imposed. It is thus unclear whether he had originally sought to challenge only the discretionary aspects of his sentence, or whether he also intended to attack his conviction.[1]

1. In one of the *pro se* motions which Lantzy filed after the original sentence was imposed, Lantzy asserted that "[p]ost-judgment counsel was ineffective due to the fact that he was aware that defendant was

On November 20, 1996, the PCRA court entered an order denying relief. In the accompanying opinion, the court found that, by negotiating a reduced sentence, plea counsel possessed a reasonable basis for his actions designed to effectuate Lantzy's interests; therefore, Lantzy could not demonstrate that counsel rendered ineffective assistance. The PCRA court further opined that plea counsel's actions did not prejudice Lantzy, but rather, "it was [Lantzy's] own actions [in lodging an appeal from the reduced sentence] that led to his current sentence."

On appeal, the Superior Court affirmed in a divided *en banc* opinion. *See Commonwealth v. Lantzy ("Lantzy II")*, 712 A.2d 288 (Pa.Super.1998). Judge Johnson, writing for the majority, opened the analysis with an acknowledgment that post-conviction relief was traditionally available to a petitioner who established that his counsel was ineffective for failing to file a direct appeal as requested. *Id.* at 290 (citing *Commonwealth v. Hickman*, 434 Pa.Super. 633, 634–35, 644 A.2d 787, 788 (1994)). The majority found, however, that such relief was statutorily implicated only pursuant to the terms of former Section 9543(a)(2)(v), which provided petitioners with relief where their judgments of sentence resulted from a violation of the United States Constitution or federal law which would require the granting of federal *habeas corpus* relief. *See* 42 Pa.C.S. § 9543(a)(2)(v)(repealed). From the repeal of former Section 9543(a)(2)(v), which occurred in connection with the 1995 amendments to the PCRA, the majority inferred that the General Assembly intended to narrow the availability of post-conviction relief in conformity with the act's express purpose, namely, the provision of relief to persons who are innocent or are serving illegal sentences. *See Lantzy II*, 712 A.2d at 290 (citing 42 Pa.C.S. § 9542).

Subsequent to the elimination of Section 9543(a)(2)(v), the majority found, the claim of a petitioner in Lantzy's circum-

intoxicated at the time of the offense but did not inform defendant that intoxication could have negated an element of the offense." Lantzy also sought to withdraw his guilty plea, maintaining that it was "not entered knowingly and intelligently."

stance must be assessed under Section 9543(a)(2)(ii) of the PCRA, which provides for relief where a petitioner pleads and proves by a preponderance of the evidence that his conviction resulted from "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Relying upon several Superior Court panel decisions, the majority interpreted Section 9543(a)(2)(ii) as requiring that an ineffectiveness claim brought under the PCRA raise a question of whether an innocent individual has been convicted. *See Lantzy II,* 712 A.2d at 290 (citing *Commonwealth v. Korb,* 421 Pa.Super. 44, 46–49, 617 A.2d 715, 716–17 (1992)). Since Lantzy failed to make the required showing that he was wrongfully convicted, the majority held that his claim was not cognizable under the amended PCRA.

In support of this holding, the majority also cited *Commonwealth v. Petroski,* 695 A.2d 844 (Pa.Super.1997), in which a Superior Court panel previously held that a PCRA petitioner lacked the ability to challenge his counsel's ineffectiveness for failing to file a direct appeal. The majority acknowledged that *Petroski* contained language which could be read to suggest that post-conviction petitioners are in all cases precluded from seeking PCRA relief for the failure of trial counsel to file a requested direct appeal. *See, e.g., Petroski,* 695 A.2d at 847 (stating that "the truth-determining process and a finding of guilt or innocence both occur during trial[;][m]atters occurring after the judgment of sentence cannot determine what has occurred before"). Seeking to clarify the holding of *Petroski,* however, the majority indicated that a petitioner may obtain PCRA relief for his trial counsel's failure to file a requested appeal, but only if the petitioner pleads and proves his innocence.

Although the majority held that relief was unavailable to Lantzy under the PCRA, it was discomfited by the Commonwealth's argument that relief was foreclosed in all contexts by virtue of a failure to establish innocence. Thus, the majority indicated that relief was separately available through a gener-

al request for relief *nunc pro tunc* outside the framework of the PCRA. *See Lantzy II*, 712 A.2d at 291. In this regard, the majority cited to this Court's decision in *Commonwealth v. Stock*, 545 Pa. 13, 679 A.2d 760 (1996).[2]

The dissenting opinion, authored by President Judge McEwen and joined by Judges Cavanaugh and Popovich, emphasized that, in addition to the language alluding to a petitioner's innocence, the statutory provision describing the PCRA's purpose and scope also provides that "the action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose . . ., including habeas corpus and coram nobis." *See* 42 Pa.C.S. § 9542. The dissent interpreted this provision as evidencing the General Assembly's intention to channel all claims for post-conviction relief through the PCRA. *Lantzy II*, 712 A.2d at 295. Thus, the dissent disagreed with the majority's conclusion that *nunc pro tunc* relief should be available outside the framework of the PCRA to restore rights connected with the appeal from a judgment of sentence.

The dissent also noted that, under United States Supreme Court precedent, where a state constitution provides for a first appeal as of right, such appeal represents an integral part of the adjudication of guilt or innocence. *See id.* at 296 (citing *Evitts v. Lucey*, 469 U.S. 387, 396–97, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985)). Thus, according to the dissent, where counsel's ineffectiveness operates to deprive a defendant of his constitutional right to appeal his judgment of sentence, the finding of guilt is thereby rendered inherently unreliable, giving rise to a claim for post-conviction relief under the express terms of Section 9543(a)(2)(ii).

2. In *Stock*, this Court found that *nunc pro tunc* relief was available to restore a petitioner's appellate rights after his counsel failed to perfect a direct appeal following convictions on summary offenses, for which fines were imposed. *Stock*, 545 Pa. at 19, 679 A.2d at 764. The Court explained that "an appeal *nunc pro tunc* is intended as a remedy to vindicate the right to appeal where that right has been lost due to extraordinary circumstances." *Id.*

Further, the dissent took issue with the majority's conclusion that the 1995 amendments to the PCRA were intended to narrow its scope, thus precluding review of claims based on the denial of a state constitutional right to a direct appeal. Under the dissent's interpretation, the provisions of the PCRA, apart from the repealed section 9543(a)(ii)(v), would provide relief for such violations of federal constitutional rights as would warrant *habeas corpus* relief. It would follow, then, that the amendment merely eliminated a redundancy.

The dissent also pointed out that the "truth-determining" and "guilt or innocence" language employed in Section 9543(a)(2)(ii) describes the post-conviction petitioner's burden of establishing prejudice. According to the dissent, however, prejudice should be presumed in circumstances in which counsel fails to file a requested direct appeal. In this regard, the dissent quoted at length from the decision in *Lozada v. Deeds*, 964 F.2d 956 (9th Cir.1992), which discusses the concept of presumed prejudice in the context of federal *habeas corpus* jurisprudence.

In this appeal, Lantzy urges that we adopt the rationale employed by President Judge McEwen in dissent. The Commonwealth, on the other hand, endorses the opinion of the Superior Court majority insofar as it holds that Lantzy's appeal is expressly foreclosed under the terms of the PCRA. The Commonwealth argues, however, as it has generally contended in the trial and appellate courts in other cases, that the PCRA must remain the sole and exclusive vehicle through which collateral relief from a conviction or sentence may be obtained.[3] Thus, the Commonwealth vigorously opposes the suggestion of the Superior Court majority that *nunc pro tunc* relief should be made available outside of the PCRA to a post-conviction petitioner who is deprived of his right to a direct

---

**3.** Lantzy and the Commonwealth are in agreement that restoration of appellate rights falls within the range of available remedies under the terms of the PCRA. *See* 42 Pa.C.S. § 9546 (providing that "[i]f the court rules in favor of the petitioner, it shall order appropriate relief and issue supplementary orders as to rearraignment, retrial, custody, bail, discharge, correction of sentence or other matters that are necessary and proper").

appeal but fails to allege or establish his innocence. The Office of the District Attorney of Allegheny County filed an *amicus curiae* brief which emphasizes the Commonwealth's position that the availability of a *nunc pro tunc* remedy outside the confines of the PCRA would circumvent the jurisdictional, procedural and pleading requirements of the post-conviction relief statute.

The approaches advocated by the majority and dissenting opinions in the Superior Court represent thoughtful efforts to apply traditional principles of statutory construction to discern the intention of the General Assembly in structuring the statutory scheme of post-conviction relief. The majority's holding, which emphasizes the legislative references to guilt and innocence connected with the adjudicatory process, relies almost exclusively upon a strict plain meaning analysis, focusing specifically upon the precise wording of the PCRA's prejudice requirement and applying a literal interpretation to each word used. While the directness of this approach enhances its appeal, the unavoidable result of its application, acknowledged by the Superior Court majority, is a bifurcated system of post-conviction review, in which certain claims for relief are considered under the PCRA, while other claims for relief are considered outside its framework.

This Court, however, has rejected this sort of bifurcation as inconsistent with legislative intent. In *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242 (1999), a recent decision which was not available to the Superior Court majority at the time it issued the *Lantzy II* decision, we considered a trial court's holding that the prejudice language embodied in Section 9543(a)(2)(ii) foreclosed post-conviction review of penalty phase issues in a capital case. While essentially acknowledging that the PCRA's repeated use of the "guilt or innocence" rubric could reasonably lead to the inference that the act is intended to apply only to guilt phase issues, the Court ultimately concluded that such an interpretation would collide with the legislative directive that the PCRA is intended to provide the sole means for obtaining collateral review and relief, encompassing all other common law rights and reme-

dies, including *habeas corpus*. *See* 42 Pa.C.S. § 9542; *Commonwealth v. Ahlborn*, 548 Pa. 544, 549, 699 A.2d 718, 721 (1997)(noting that, unlike the PCRA's predecessor, the Post Conviction Hearing Act (PCHA), the PCRA expressly supersedes all common-law remedies for obtaining post-conviction collateral relief). We stated in *Chester*:

> [a]s certain penalty phase claims, which are not waived or otherwise forfeited are cognizable on traditional habeas corpus review, section 9542 plainly requires that they must be considered exclusively within the context of the PCRA. Such claims could not be legislatively foreclosed, since the Pennsylvania Constitution provides, with limited exceptions not here applicable, that the privilege of the writ of habeas corpus shall not be suspended. PA. CONST, art. I, § 14. Given that the choice was between a unified statutory procedure or bifurcated review having statutory and common law components, it seems clear that the General Assembly intended to channel all claims requiring review through the framework of the PCRA.

*Chester*, 557 Pa. at 375–76, 733 A.2d at 1251.

*Chester* aligns with President Judge McEwen's dissenting opinion in this case, which harmonized the "guilt or innocence" and "sole means" provisions of the PCRA utilizing essentially the same logic. This reasoning compels the conclusion that the PCRA provides the exclusive remedy for post-conviction claims seeking restoration of appellate rights due to counsel's failure to perfect a direct appeal, since such claims also were cognizable on traditional *habeas corpus* review.[4]

---

**4.** Were the "sole means" directive to be subordinated to a limitation based upon "guilt or innocence," several unreasonable, or at least impractical, results would follow. For one, as noted, courts would be required to employ a bifurcated process of review having statutory and common-law components in cases in which a post-conviction petitioner asserts multiple claims, a subset of which do not necessarily implicate the reliability of the adjudication of guilt, but which would be cognizable on traditional *habeas corpus* review. *See generally* 42 Pa.C.S. § 6503 (providing that where no other statutory post-conviction remedy is available, any individual "restrained of his liberty within this Commonwealth" may apply for a writ of *habeas corpus* ). Further, the PCRA, with its firm time restrictions and pleading and evidentiary

■ The Superior Court majority's interpretation of Section 9543(a)(2)(ii) also led it to conclude that a post-conviction petitioner must plead and prove innocence in order to obtain redress under the terms of Section 9543(a)(2)(ii). In *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999),[5] however, this Court held that the burden imposed upon a post-conviction petitioner to establish that his counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place" is equivalent to the prejudice requirement applied by the federal courts to both direct and collateral review under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Kimball*, 555 Pa. at 312, 724 A.2d at 333 (stating that "[r]eliability of the adjudication of guilt or innocence and the probability that counsel's ineffectiveness caused a different outcome of the proceedings are concepts so closely intertwined and commonly-rooted in *Strickland* that

requirements, would apply to the claims involving the most serious allegations, i.e., prisoners who are innocent or serving illegal sentences, while the less restrictive standards applicable in the *habeas corpus* context would apply to the claims as to which the guilt or innocence of the defendant (or the legality of the sentence) is not directly in issue. Additionally, such an interpretation would inject a highly formalistic element into post-conviction proceedings, in which a prisoner's claim would be denied simply because he failed to invoke the correct form of relief. Indeed, confusion would be likely to result, with defense practitioners erring on the side of seeking dual relief by filing joint PCRA/*habeas corpus* petitions and allowing the courts to sort out the manner in which the claims are to be adjudged.

Under the interpretation endorsed in *Chester*, the PCRA alleviates such difficulties by providing the procedural context within which constitutional rights connected with *habeas corpus* remedies may be exercised. This construction also has the benefit of maintaining substantial alignment between state and federal post-conviction jurisprudence, giving meaning to the federal exhaustion requirement, which affords the state courts the opportunity to initially review claims involving alleged deprivations of a petitioner's federal constitutional rights. Finally, because our interpretation obviates the need to invoke extraordinary procedures such as that which was made available in *Stock*, 545 Pa. at 19, 679 A.2d at 764, it satisfies the Commonwealth's concern regarding the integrity of the jurisdictional, procedural and pleading requirements of the PCRA.

5. Like the decision in *Chester*, *Kimball* also post-dated the Superior Court's opinion in *Lantzy II*.

we refuse to separate them").[6] The holding of *Kimball* is reinforced in *Chester*, which expressly rejected the suggestion that the General Assembly might have employed the same language to narrow the field of issues cognizable in the state post-conviction setting in a manner inconsistent with traditional *habeas corpus* review. *See Chester*, 557 Pa. at 370 n. 4, 733 A.2d at 1248 n. 4.

Thus, the issue of whether a claim for relief based upon counsel's failure to file a direct appeal meets the prejudice requirement of Section 9543(a)(2)(ii) may be addressed by direct reference to *Strickland*; indeed, this approach is particularly useful here, since the application of *Strickland* in this setting is well developed in federal jurisprudence. Indeed, the *Strickland* decision itself expressly acknowledges that actual or constructive denial of the assistance of counsel falls within a narrow category of circumstances in which prejudice is legally presumed. *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. Since the failure to perfect a requested appeal is the functional equivalent of having no representation at all, *see Evitts*, 469 U.S. at 396–97, 105 S.Ct. at 836 (noting that the failure to perfect an appeal "essentially waived respondent's opportunity to make a case on the merits; in this sense it is difficult to distinguish respondent's situation from that of someone who had no counsel at all"), *Strickland*, on its own terms, establishes the right to relief. Additionally, as President Judge McEwen reasoned, since Article V, Section 9 of the Pennsylvania Constitution guarantees a direct appeal as of right, *see Commonwealth v. Wilkerson*, 490 Pa. 296, 299, 416 A.2d 477, 479 (1980), a failure to file or perfect such an appeal results in a denial so fundamental as to constitute prejudice *per se*. *See generally Canales v. Roe*, 151 F.3d 1226, 1229–30 (9th Cir.1998)(stating that "[i]t appears that every federal court of appeals to address the issue has applied some form of a rule of

---

**6.** As noted in *Kimball*, the language employed in *Strickland* is, in many respects, remarkably similar to the PCRA's prejudice standard. *See, e.g., Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064 (stating that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result* " (emphasis added)).

presumed prejudice where counsel fails to file a notice of appeal").[7]

Thus, we hold that, where there is an unjustified failure to file a requested direct appeal,[8] the conduct of counsel falls

7. *See generally Peguero v. United States*, 526 U.S. 23, ——, 119 S.Ct. 961, 965–66, 143 L.Ed.2d 18 (1999)(O'Connor, J., joined by Stevens, Ginsburg and Breyer, JJ., concurring)(noting that where a trial court fails to advise a defendant of his right to appeal, resulting in the defendant's foregoing his right to appeal, prejudice is assumed and, accordingly, the defendant need not demonstrate that he possessed meritorious grounds for an appeal); *Penson v. Ohio*, 488 U.S. 75, 88–89, 109 S.Ct. 346, 354, 102 L.Ed.2d 300 (1988)(holding that the prejudice standard articulated in *Strickland* is inapplicable where the petitioner was deprived of the assistance of counsel on appeal after counsel withdrew); *Rodriquez v. United States*, 395 U.S. 327, 329, 89 S.Ct. 1715, 1717, 23 L.Ed.2d 340 (1969)(holding that the defendant was entitled to collateral relief without the requirement of demonstrating that his appeal would have had merit in a case in which the failure to appeal the conviction was attributable to an error by counsel); *Anders v. California*, 386 U.S. 738, 743–44, 87 S.Ct. 1396, 1399–1400, 18 L.Ed.2d 493 (1967)(holding that a refusal of appointed counsel to properly pursue an appeal, coupled with the refusal of the court to appoint substitute counsel, amounted to a denial of fundamental due process); *United States v. Stearns*, 68 F.3d 328, 329–30 (9th Cir. 1995)("a failure to appeal after a plea does, indeed, result in ineffective assistance of counsel without a specific showing of prejudice"); *United States v. Nagib*, 56 F.3d 798, 801 (7th Cir.1995)(petitioner not required to demonstrate prejudice under *Strickland* as his attorney's failure to file a timely notice of appeal constituted *per se* ineffectiveness); *Romero v. Tansy*, 46 F.3d 1024, 1030–31 (10th Cir.)("if counsel's failure to perfect a direct appeal violated appellant's right to effective assistance of counsel, then appellant has demonstrated both cause and prejudice for purposes of overcoming any procedural bar to his claim on federal habeas review"), *cert. denied*, 515 U.S. 1148, 115 S.Ct. 2591, 132 L.Ed.2d 839 (1995); *United States v. Peak*, 992 F.2d 39, 41–42 (4th Cir.1993) ("a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success"); *Lozada*, 964 F.2d at 956–59 ("[w]e hold that prejudice is presumed under *Strickland* if it is established that counsel's failure to file a notice of appeal was without the petitioner's consent"); *Estes v. United States*, 883 F.2d 645, 648–49 (8th Cir.1989); *Cannon v. Berry*, 727 F.2d 1020, 1022 (11th Cir.1984); *United States v. Winterhalder*, 724 F.2d 109, 110 (10th Cir.1983). The holding that failure of counsel to file a requested direct appeal constitutes prejudice under the *Strickland* standard has been applied in circumstances involving both federal and state prisoners. *See Canales*, 151 F.3d at 1229–30.

8. Our holding should not be construed as affecting the substantial body of case law which concerns the circumstance in which a defendant

beneath the range of competence demanded of attorneys in criminal cases, denies the accused the assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, as well as the right to direct appeal under Article V, Section 9, and constitutes prejudice for purposes of Section 9543(a)(2)(ii). Therefore, in such circumstances, and where the remaining requirements of the PCRA are satisfied, the petitioner is not required to establish his innocence or demonstrate the merits of the issue or issues which would have been raised on appeal.

■ In the present case, plea counsel's challenged conduct is somewhat different from the failure to file a requested direct appeal—here, counsel perfected the appeal, but subsequently withdrew it. The PCRA court held that plea counsel was not ineffective because he possessed a reasonable basis for this action. *See generally Commonwealth v. Howard*, 553 Pa. 266, 274, 719 A.2d 233, 237 (1998)(noting that counsel will not be deemed ineffective where his conduct is supported by a reasonable basis). Further, the court also found, as the Commonwealth now argues, that any deprivation resulted from Lantzy's own conduct in attempting to challenge the agreed modified sentence, since, in all likelihood, the original sentence would not otherwise have been reimposed.

■ Our review is limited to examining whether the evidence of record supports the PCRA court's ruling, and whether such ruling is free from legal error. *Commonwealth v. Carpenter*, 555 Pa. 434, 443–44, 725 A.2d 154, 159 (1999). We need not undertake an extensive review of the record, however, as it is undisputed that plea counsel failed to inform Lantzy that the sentencing court had no authority to impose the reduced sentence at the time the perfected direct appeal was

seeks to pursue frivolous claims on appeal, or demands that counsel pursue every possible course of action or press every point. *See generally Anders*, 386 U.S. at 744, 87 S.Ct. at 1400; *Commonwealth v. McClendon*, 495 Pa. 467, 470–71, 434 A.2d 1185, 1187 (1981); *Commonwealth v. Finley*, 379 Pa.Super. 390, 393–94, 550 A.2d 213, 215 (1988).

withdrawn in exchange for that sentence. Lantzy was entitled to have notice of the court's lack of authority to modify the sentence prior to entering into the agreement with the Commonwealth, as this fact substantially affected the benefit that Lantzy could expect to receive in exchange for waiving his appellate rights.[9]   As counsel lacked a reasonable basis for failing to advise Lantzy that the sentence modification would be invalid, counsel's representation was deficient. *Cf. Commonwealth v. Boyd*, 547 Pa. 111, 116, 688 A.2d 1172, 1175 (1997)(the constitutional right to effective assistance of counsel "may be violated by a failure to properly explain the advantages and disadvantages of accepting or rejecting a plea offer").

■ While a defendant has the ability to relinquish his appellate rights, this can only be accomplished through a knowing, voluntary and intelligent waiver. *In the Interest of J.J.*, 540 Pa. 274, 279, 656 A.2d 1355, 1357 (1995). Where, as here, the defendant, upon the advice of his counsel, forfeits his appellate rights in return for an illusory modification of his sentence, such waiver cannot reasonably be deemed valid. The remedy for the deprivation of this fundamental right of appeal is its restoration.

Accordingly, the judgment of the Superior Court is reversed and the case is remanded to the PCRA court for entry of an appropriate order.

---

**9.** In addition to the fact that the Superior Court would quash any appeal from the order and reinstate Lantzy's original sentence, it is questionable whether Lantzy would have been able to compel the Department of Corrections to honor the order had its validity been challenged. *See, e.g., Fajohn v. Commonwealth, Dep't of Corrections*, 547 Pa. 649, 651, 692 A.2d 1067, 1068 (1997)(holding that mandamus does not lie to compel the Department of Corrections to honor a facially invalid order); *Doxsey v. Commonwealth*, 674 A.2d 1173, 1175 (Pa. Cmwlth.1996)(same).