## COMMONWEALTH of Pennsylvania, Appellee

### v.

## David Joseph DONAGHY, Appellant.

Superior Court of Pennsylvania.

Submitted July 5, 2011.
Filed Aug. 31, 2011.
Reargument Denied Oct. 14, 2011.

---

Stuart M. Wilder, Doylestown, for appellant.

David W. Heckler, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

BEFORE: SHOGAN, LAZARUS, and PLATT,* JJ.

OPINION BY LAZARUS, J.:

David Joseph Donaghy appeals from the dismissal of his first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541, *et seq.* After careful review, we reverse the PCRA court's order and remand with instructions to reinstate Donaghy's direct appellate rights.

On December 19, 2007, Donaghy and two accomplices, Patricia Chewning and Jeremy Calhoun, conspired to rob Calhoun's 80–year old neighbor, William Smith, after Calhoun found out Smith kept cash in his home. Chewning knocked on Smith's door, while Donaghy and Calhoun stood on opposite sides of the door, out of Smith's view. After Smith opened the door, Donaghy and Calhoun rushed in, threw Smith to the floor, pulled his shirt over his head, punched him in the rib and torso area and stole his wallet. Donaghy and Calhoun also stole a jar of coins from inside the home. Smith suffered fractured ribs in the attack. Donaghy, Calhoun and Chewning used the approximately $80 obtained in the robbery to purchase crack cocaine.

On September 8, 2008, Donaghy was charged with three counts of robbery; one count each of burglary, simple assault, reckless endangerment, theft by unlawful taking and receiving stolen property; and six counts of conspiracy.[1] After a preliminary hearing at which the victim testified, Donaghy entered an open guilty plea to the above charges on March 5, 2009. The court sentenced Donaghy to an aggregate of 9 to 18 years' imprisonment, plus a concurrent sentence of 15 years' state probation.[2] Donaghy did not file a direct appeal.

On January 21, 2010, Donaghy filed a *pro se* PCRA petition.[3] On April 6, 2010, court-appointed counsel filed an amended petition and the court held PCRA hearings on April 8, 2010 and June 23, 2010.[4] By order dated September 17, 2010, the PCRA court denied Donaghy's petition. This timely appeal followed, in which Donaghy alleges that trial counsel was ineffective for failing to file a direct appeal on his behalf.[5]

* Retired Senior Judge assigned to the Superior Court.

1. *See* 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3701(a)(1)(iv), 3701(a)(1)(v), 3502(a), 2701(a)(1), 2705, 3921(a), 3925(a) and 903.

2. The court sentenced Donaghy to 5 to 10 years' imprisonment on one of the robbery counts (threat of immediate serious injury, 18 Pa.C.S.A. § 3701(a)(1)(ii)), a consecutive 4 to 8 years on the burglary count, and a concurrent 15 years' probation on one count of conspiracy. No further penalty was imposed on the remaining 11 charges.

3. Donaghy also filed numerous *pro se* amendments to the original petition.

4. The first PCRA hearing was held by videoconference. After testimony from Donaghy's daughter, Donaghy exercised his right to be present in the courtroom. Thus, the court continued the hearing until such time as Donaghy could be brought down from prison.

5. Because we find that this claim is meritorious and reinstate Donaghy's direct appellate rights, *nunc pro tunc*, we do not address Donaghy's other claims, both of which also involve the alleged ineffectiveness of trial counsel. *See Commonwealth v. Miller*, 868 A.2d 578, 580 (Pa.Super.2005), *appeal denied*, 584 Pa. 685, 881 A.2d 819 (2005) ("When a PCRA court grants a request for reinstatement of direct appeal rights *nunc pro tunc*, it may address, but not 'reach' the merits of any remaining claims.").

This Court's standard of review regarding an order dismissing a PCRA petition is whether the determination of the PCRA court is supported by evidence of record and is free of legal error. *Commonwealth v. Burkett,* 5 A.3d 1260, 1267 (Pa.Super.2010) (citations omitted).

■ Donaghy first asserts trial counsel was ineffective for failing to file a direct appeal of his judgment of sentence. Donaghy asserts he had his daughter contact counsel and request he file an appeal, but counsel failed to do so. He also claims he requested an appeal in correspondence to counsel. The Commonwealth maintains Donaghy never requested counsel file an appeal. Rather, Donaghy merely sought advice from counsel as to how Donaghy himself might do so. For the following reasons, we conclude counsel was ineffective for his failure to properly consult with Donaghy and ascertain his wishes regarding an appeal.

■ Where a defendant clearly asks for an appeal and counsel fails to file one, a presumption of prejudice arises regardless of the merits of the underlying issues. *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564 (1999). However, *Lantzy* does not address a situation, such as the case at hand, in which the defendant has not clearly articulated his wishes regarding an appeal. Such a situation was subsequently addressed in *Commonwealth v. Touw,* 781 A.2d 1250 (Pa.Super.2001).

In *Touw,* we applied the U.S. Supreme Court's holding in *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), in which the Court addressed the question of whether "counsel [is] deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes [regarding an appeal] one way or the other[.]" *Flores–Ortega,* 528 U.S. at 477, 120 S.Ct. 1029. In answering this question, the Court used the two-pronged

framework established under *Strickland,* which requires that a defendant asserting a claim of ineffective assistance of counsel must show (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant.

With regard to the first *Strickland* prong, the Court declined to set a bright-line rule, but concluded counsel "has a constitutionally-imposed duty to consult with his client about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480, 120 S.Ct. 1029. The Court defined the term "consult" to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478, 120 S.Ct. 1029.

In line with the second prong of *Strickland,* the *Flores–Ortega* Court went on to hold that once a defendant establishes that counsel had a constitutionally imposed duty to consult, but failed to do so, he must also show that prejudice resulted from such failure. *Id.* at 481, 120 S.Ct. 1029. In order to do so, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* The question whether a given defendant made the requisite showing of prejudice will turn on the facts of a particular case. *Id.* at 485, 120 S.Ct. 1029.

At the PCRA hearing in this matter, Donaghy testified that he instructed counsel to file an appeal while still in court immediately after sentencing. N.T. PCRA Hearing, 6/23/10, at 14. Donaghy's daughter testified that she spoke to counsel a

few days after sentencing and told him to "file an appeal for reconsideration." N.T. PCRA Hearing, 4/8/10, at 8. Donaghy also submitted several letters written to counsel after his sentencing. In one of those letters, dated March 19, 2009, Donaghy wrote: "You say that I can file a direct appeal to Superior Court. What kinda reasons do you need? And how long do I have to do this?" PCRA Hearing, 6/23/10, Exhibit D–1.

Counsel, on the other hand, testified that Donaghy did not ask him to file an appeal on the date of his guilty plea. *Id.* at 102. He did, however, acknowledge that Donaghy had made inquiries regarding the appellate process:

Q: Did the defendant ever ask you to file a direct appeal?

A: No.

Q: He didn't ask you that day he pleaded guilty?

A: No. Again, the only relation to a direct appeal that I saw as coming from Mr. Donaghy was the two pieces of correspondence [to which] Mr. Wilder drew my attention earlier in which Mr. Donaghy does not ask me to file anything. He just asks procedurally about [what] happens next. **And I drew from that the conclusion that he was interested in filing one.**

Q: So it was your belief the defendant wanted to file his own appeal?

A: Correct, because by that date I already apprized him of the fact that I didn't believe a direct appeal had any merit.

*Id.* (emphasis added).

The PCRA court discredited the testimony of Donaghy and his daughter and believed the testimony of counsel indicating that neither Donaghy nor his daughter

ever asked him to file an appeal. *See* PCRA Court Opinion, 3/22/11, at 13. Further, the court found as follows:

[A] review of the correspondence between Defendant and guilty plea counsel submitted during the PCRA hearing establishes the following: counsel explained to Defendant he could file an appeal within thirty days; counsel explained the issues one can raise after a guilty plea; and counsel informed Defendant that he did not believe there was merit to any appeal.

Accordingly, this Court found that defendant failed to satisfy his burden of proving that he did in fact request an appeal and counsel disregarded that fact.

*Id.* at 14.

■ We, as an appellate court, may not second-guess the PCRA court's credibility determinations. *Commonwealth v. O'Bryon,* 820 A.2d 1287, 1290 (Pa.Super.2003) ("[I]t is axiomatic that appellate courts must defer to the credibility determinations of the trial court as fact finder, as the trial judge observes the witnesses' demeanor first-hand."). However, we disagree with the court's failure to interpret Donaghy's March 19, 2009 letter to counsel as a clear indication that he desired to file an appeal.[6] While counsel testified that he interpreted Donaghy's letter to mean Donaghy, himself, would file the appeal, we find the letter sufficiently demonstrated a desire to appeal, such that counsel should have made "a reasonable effort to discover [Donaghy's] wishes" as required under *Flores–Ortega.* Counsel's responsive letter, advising that Donaghy could file an appeal, does not satisfy the *Flores–Ortega* counseling requirements. Rather, counsel should have asked Donaghy whether he

---

**6.** We note that Donaghy's March 19, 2010 letter was mailed, and received by counsel, well within 30 days of Donaghy's judgment of sentence.

wanted counsel to file a notice of appeal on his behalf. Counsel's failure to do so deprived Donaghy of his constitutional right to the assistance of counsel on direct appeal.

■ Counsel testified that he believed Donaghy had no viable basis for an appeal. However, a defendant need not demonstrate nonfrivolous grounds for appeal to establish that counsel was ineffective for failing to consult with him regarding his desire to appeal. *See Flores–Ortega,* 528 U.S. at 485–86, 120 S.Ct. 1029 ("To require defendants to specify the grounds for their appeal and show that they have some merit would impose a heavy burden on defendants who are often proceeding *pro se* in an initial ... motion.") (quoting *Peguero v. U.S.,* 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) (O'Connor, J., concurring)). As such, counsel's belief that Donaghy had no viable issues on appeal does not absolve him of his duty to ascertain Donaghy's wishes with regard to the filing of an appeal.

■ Moreover, counsel's assertion that he could not, under the Rules of Professional Conduct, file an appeal that he deemed frivolous is unavailing.[7] The procedures established pursuant to *Anders, McClendon* and *Santiago*[8] provide counsel with a mechanism whereby he can satisfy his client's desire for a direct appeal without having to "compromise principle or to act contrary to his own conscience." *McClendon,* 434 A.2d at 1187 (quoting *Commonwealth v. Perry,* 464 Pa. 272, 346 A.2d 554, 555 (1975)). In fact, the follow-ing exchange occurred between Donaghy's PCRA counsel and trial counsel during the PCRA hearing:

Q: I don't want to be argumentative, but would you have considered filing or did you consider filing a direct appeal and then an Anders Brief to state the appeal was meritless and withdraw your appearance?

A: I **would consider that now.**

N.T. PCRA Hearing, 6/23/10, at 76 (emphasis added). Counsel's response suggests he was unaware of the ability of counsel, under *Anders,* to withdraw from representation while simultaneously preserving his client's appellate rights. This gap in counsel's knowledge deprived Donaghy of his direct appellate rights. Accordingly, we reverse the order of the PCRA court and direct the court to reinstate Donaghy's direct appellate rights.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

■

---

7. Pennsylvania Rule of Professional Conduct 3.1 provides, in relevant part, as follows:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous[.]

Pa.R.P.C. 301. At Donaghy's PCRA hearing, trial counsel testified that "we are barred from filing meritless motions. I have never

and will never file an appeal that has no merit." N.T. PCRA Hearing, 6/23/10, at 76.

8. *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *Commonwealth v. McClendon,* 495 Pa. 467, 434 A.2d 1185 (1981); and *Commonwealth v. Santiago,* 602 Pa. 159, 978 A.2d 349 (2009).