J-S48005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| LEWIS BENJAMIN KNIGHT | : | |
| Appellant | : | No. 1757 MDA 2016 |

Appeal from the PCRA Order September 23, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0000744-2014,
CP-36-CR-0000747-2014, CP-36-CR-0000752-2014,
CP-36-CR-0000758-2014

BEFORE:   OTT, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY OTT, J.:                        **FILED OCTOBER 12, 2017**

Lewis Benjamin Knight appeals from the order entered September 23, 2016, in the Court of Common Pleas of Lancaster County, that denied, after a hearing, his first petition filed pursuant to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546.[1]  On October 17, 2014, Knight

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Knight filed the instant, counseled appeal on October 25, 2016.  A notice of appeal must be filed within 30 days of the order being appealed.  ***See*** Pa.R.A.P. 903(a); ***Commonwealth v. Moir***, 766 A.2d 1253, 1254 (Pa. Super. 2000).  The day of entry of an order is the day that the clerk of courts mails or delivers copies of the order to the parties, or makes much copies public. Pa.R.A.P. 108(a)(1).

Here, the trial court docket does not indicate when the PCRA court's September 23, 2016, order was sent to the parties.  However, on the back of the order there is a hand-written notation:  "served 9/26/16" and "Def Atty –

was sentenced to serve an aggregate term of seven to 16 years' imprisonment, following his open plea at four dockets, pleading guilty to 11 counts of burglary and *nolo contendere* to three counts of burglary.[2] He contends he was deprived of effective assistance of counsel when trial counsel failed to file a direct appeal as requested. **See** Knight's Brief at 5. Based upon the following, we affirm.

The PCRA court aptly summarized the background of this case:

> On January 27, 2014, [Knight] was arrested and charged on Information Number 744-2014, Information Number 747-2014, Information Number 752-2014 and Information Number 758-

---

FCM" underneath the date. Accordingly, it appears the order was sent to Knight's counsel by first class mail on September 26, 2016. Using September 26, 2016 as the date of entry, Knight had 30 days, *i.e.*, until October 26, 2016, to file his notice of appeal. As the notice was filed on October 25, 2016, we regard the appeal as timely filed and therefore properly before this Court.

[2] At Docket No. 744-2014, Knight pleaded guilty to two counts of burglary, overnight accommodation, person present, and pleaded *nolo contendere* to two counts of burglary, overnight accommodation, person present. 18 Pa.C.S. § 3502(a)(1).

At Docket No. 747-2014, Knight pleaded guilty to one count of burglary, overnight accommodation, person present. 18 Pa.C.S. § 3502(a)(1).

At Docket No. 752-2014, Knight pleaded guilty to one count of burglary, overnight accommodation, no person present. 18 Pa.C.S. § 3502(a)(2).

At Docket No. 758-2014, Knight pleaded guilty to seven counts of burglary, overnight accommodation, no person present, and pleaded *nolo contendere* to one count of burglary, overnight accommodation, no person present. 18 Pa.C.S. § 3502(a)(2).

2014 with a variety of charges stemming from a series of burglaries which occurred from January 13th through January 25th of 2014. On July 11, 2014, [Knight] entered an open plea of guilty to eleven counts of burglary and *nolo contender*[*e*] to three counts of burglary, and on October 17, 2014, was sentenced to an aggregate term of [7-16] years' incarceration. At the time of his guilty plea [and sentencing], [Knight] was represented by Heather Reiner, Esquire. No motion for post-sentence relief or notice of appeal was filed on [Knight's] behalf.

On June 26, 2015, and through his counsel, [Knight] filed a petition for post-conviction relief under the Post Conviction Relief Act (PCRA), which sought the reinstatement of his direct appeal rights for the purpose of appealing his sentence to the Superior Court. [Knight] asserts that Attorney Reiner was ineffective in failing to file a motion for reconsideration of sentence, an appeal or otherwise failing to preserve his appellate rights, after specifically being asked to do so. On December 11, 2015, an evidentiary hearing was held before this court, and upon its completion, a subsequent briefing schedule was ordered [and completed].

PCRA Court Opinion, 9/23/2016, at 1-2 (footnote omitted). By order dated September 23, 2016, the PCRA court denied PCRA relief and this appeal followed.[3]

The principles that guide our review are as follows:

On appeal from the denial of PCRA relief, our standard of review requires us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. ***Commonwealth v. Washington***, 592 Pa. 698, 927 A.2d 586, 593-94 (Pa. 2007). To be eligible for relief based on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate by a preponderance of the evidence that (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or omission;

_____

[3] On November 22, 2016, the PCRA court issued an order, reaffirming its September 23, 2016, opinion and order. The docket does not reflect that the PCRA court ordered PCRA counsel to file a Pa.R.A.P. 1925(b) statement. However, PCRA counsel filed a concise statement on behalf of Knight on February 6, 2017.

and (3) there is a reasonable probability that the result of the proceeding would have been different absent such error. *Commonwealth v. Steele*, 599 Pa. 341, 961 A.2d 786, 796 (Pa. 2008).

*Commonwealth v. Widgins*, 29 A.3d 816, 819 (Pa. Super. 2011).

Knight argues trial counsel was ineffective in failing to file a direct appeal, "despite his and his mother's express statements to counsel that they wished to seek review of the trial court's sentence." Knight's Brief at 11.

It is well settled that the unjustified failure to file a requested direct appeal is ineffective assistance of counsel *per se* and that an appellant need not show that he likely would have succeeded on appeal in order to meet the prejudice prong of the test for ineffectiveness. *Commonwealth v. Bath*, 907 A.2d 619, 622 (Pa. Super. 2006). However, "[b]efore a court will find ineffectiveness of counsel for failing to file a direct appeal, the defendant must prove that he requested an appeal and that counsel disregarded that request." *Id.* (citation omitted). Here, Knight contends he asked to appeal his sentence.

By way of background, after Knight entered an open plea of guilty to 11 counts of burglary and *nolo contendere* to three counts of burglary, the trial court sentenced him to 7 to 16 years' imprisonment as follows: At Docket No. 744-2014, three concurrent sentences of 2-5 years' imprisonment and one concurrent sentence of 1½-3 years' imprisonment; at Docket No. 747-2014, 1½-3 years' imprisonment, consecutive to Docket No. 744-2014; at Docket No. 752-2014, 1½-3 years' imprisonment, consecutive to Docket No. 747-2014; at Docket No. 758-2014, eight concurrent sentences of 2-5 years'

imprisonment, consecutive to the sentence imposed at Docket No. 752-2014. All of the sentences were guideline sentences, except the eight concurrent sentences imposed at Docket No. 758-2014.[4]

At the PCRA hearing, Knight's trial counsel, Heather Reiner, Esquire, testified that there was a negotiated plea offer in Knight's case of "Ten to 20," that she conveyed the offer to Knight, and the decision was to "try to do better with an open plea." N.T., 12/11/2015, at 10–11. Attorney Reiner testified that after the sentencing hearing, she talked to Knight, and talked to his family. *Id.* at 11. She testified as follows:

> Q. … Could you just describe for the record in general what you discussed?
>
> A. I would have said – I would have talked about, you know, … obviously what the sentence was and he understood it and I'm trying – like since you filed this, obviously I'm trying to remember exactly, you know, what he said to me. I mean, Lewis never said a lot, you know what I mean. We just kind of talked and I know he was disappointed with it but accepting of it, knew it was better than what he could have got, and I think, if I could describe his demeanor, it would be accepting, and what I said to him, what I say to all my clients, is if you need anything or you have any questions, let me know. I can't remember specifically if he asked me to file a motion for reconsideration. I know I would have told him that we did better than, you know, the 10 to 20[,] and … I remember him being accepting of that. It wasn't as good as what we hoped it to be but from our discussions, he knew it was, you know, up to the judge to decide.

_____

[4] After imposing the aggregate sentence, the trial court informed Knight: "Relative to the sentences that could have been imposed, this sentence is far less than you could be facing, even had I imposed the mitigated range sentences and made them consecutive." N.T., 10/17/2014, at 35.

Q. Okay.

A. If he would have asked me to file – if he would have said to me, I want you to file a motion for reconsideration, then I would have pursued this further.

Q. But it's possible that he did ask you for the motion for reconsideration or for an appeal in general?

A. I know he didn't ask me for an appeal but if we would have discussed a motion for reconsideration and he asked me to do that, we would have talked about it further.

Q. Okay. Did you communicate his appeal rights to him while you were talking to him?

A. Not in the cell, no. We had talked about that before the plea.

Q. Is it possible that he asked you to file in general some paperwork and didn't use the specific phrase, motion for reconsideration?

A. No. He didn't ask me specifically to do anything.

Q. Did you speak with Mr. Knight after that discussion.

A. I didn't speak to him. … I know I did talk to his family about some other matters but I can't remember if they asked me – like a lot of times people ask me, you know, how soon [is he] going to be transported. I don't know if we talked about that or not but we didn't talk about an appeal or, I mean, we talked outside the courtroom after sentencing but not after that day.

Q. Okay. But you don't recall talking with his family about an appeal?

A. I think we talked about possibly like a reconsideration but they didn't ask me to file a reconsideration.

Q. Okay. Do you remember talking about the motion for reconsideration?

A. Not like specifics.

Q. Okay. But you believe that maybe –

A. I think so. I think we talked about that.

THE COURT: One at a time.

THE WITNESS: Yeah, because I know they had with them a gentleman who had been a judge. I think he was there that day and we may have discussed that. I don't remember like really specific recollection to that. But as far as my position, what I would have said about the reconsideration is that one, we already did better than what the offer was, and two, we had a very lengthy sentencing hearing where it was my opinion – and I filed a memo regarding everything that we had discussed, everything mitigating. It was my, you know, thought that Judge Miller was very thorough in sentencing and considering everything that we presented, so it was my opinion and still my opinion that reconsideration wouldn't have been successful, but like I said, if they would have said this is what we want to do, we want to file reconsideration, I would have done it.

Q. So you're saying that hypothetically if someone had asked for reconsideration, you would have filed it despite your personal feelings about the sentence?

A. Yeah. I know in this case I would have.

Q. So you at no point considered filing a motion for reconsideration for Mr. Knight?

A. Not on my own, not without them asking me to do it.

Q. Okay. And you at no point considered filing … an appeal?

A. No, they didn't ask me for an appeal.

Q. And did you consider filing the motion for reconsideration and the notice of appeal and then filing an ***Anders***[5] brief?

---

[5] ***Anders v. California***, 386 U.S. 738 (1967) (setting out the requirements for a brief filed when appointed counsel seeks to withdraw from a direct appeal based on a determination that the issues presented are wholly frivolous).

- 7 -

A. No.

Q. Did you make any attempt to contact Mr. Knight after the day of the sentencing hearing?

A. No. I only communicated with his mother, I believe.

Q. Okay. Did you communicate with his mother after the day of sentencing or only right after the hearing?

A. After sentencing, just regarding … finances[.]

N.T., 12/11/2015, at 12–16.

Knight, in his testimony, gave a different version of the discussion after the sentencing hearing:

Q. And do you recall having a conversation with your attorney after that sentencing?

A. Yes, I do.

Q. Okay. Where and when did that conversation take place?

A. Roughly within 15 to 20 minutes after the sentencing in the back holding facility that they have.

Q. And in that conversation, did you talk about an appeal?

A. Yes.

Q. Did you ask your attorney to appeal the sentence?

A. Yes.

Q. Did you know at that time the difference between filing for reconsideration and filing an appeal?

A. No.

Q. But you believe you were clear to her that you wanted her to file some paperwork to challenge the sentence?

A. Yes.

Q. At the end of your conversation with her that day, was it your belief that she was going to file something to preserve your right to appeal?

A. Yes, it was.

N.T., 12/14/2015, at 33–34.

On cross-examination, Knight stated he had told Attorney Reiner he "would like to have her continue the process, filing paperwork, appeals, whatever needed to be done to get a lesser sentence." *Id.* at 34. He further testified, "She stated that it was more than she had hoped for and that filing any paperwork to get it reduced would only upset the judge and possibly cause me to receive more time." *Id.* at 35.

Knight's mother, Connie Knight, also testified at the hearing. She described her exchange with Attorney Reiner after sentencing: "I said we need to appeal this, he got too much time. And she said, no, that would not be a good idea because it will make the judge angry and he will get more time." *Id.* at 39. Connie Knight further testified Attorney Reiner contacted her after the hearing by letter about "the money or whatever, what the sum was I owed her, she owed me." *Id.* When asked, "Was it your understanding that something was going to be filed to preserve [Knight's] appellate rights," Connie Knight responded "No, because she [Attorney Reiner] didn't think it was a good idea." *Id.* On cross-examination, Connie Knight reconfirmed that outside the courtroom, after sentencing she had explained to Attorney Reiner

that she "wanted this appealed." *Id.* at 39–40. Connie Knight testified "Absolutely" that she would do anything for her son. *Id.* at 40.

Attorney Reiner was called on rebuttal by the Commonwealth, and testified that when she spoke to Connie Knight outside the courtroom, they did not talk about an appeal. *Id.* at 42. Attorney Reiner further testified she never made the statement that an appeal would get the judge angry and Knight would get more time. In that regard, she testified, "That doesn't even make sense to me." *Id.* On cross-examination, Attorney Reiner stated she did recall discussing a motion for reconsideration with Knight's mother, but "I know she didn't ask me to file one." *Id.* Attorney Reiner testified she could not recall the specific discussion, but her advice would have been that "I didn't think the judge would have changed her sentence because we already put everything out there we want[ed] the judge to consider and based on the exchange that happened during the sentencing, I could tell the judge put a lot of thought into her sentence and I didn't think that would have been successful." *Id.* at 43. The PCRA court questioned Attorney Reiner whether there was anything in her discussion with Knight or his mother that would have led her to believe "they were under the impression that … [a] post sentence motion or appeal … would anger the Court and lead the Court to act in a vindictive or retributive manner." *Id.* at 45. She answered, "No." *Id.*

With regard to Knight's assertion that trial counsel failed to file a direct appeal as requested, the PCRA court opined:

"[W]here there is an unjustified failure to file a requested direct appeal, the conduct of counsel falls beneath the range of competence demanded of attorneys in criminal cases … and constitutes prejudice for purposes of Section 9543(a)(2)(ii)." *Commonwealth v. Lantzy*, 736 A.2d 564, 572 (Pa. 1999). A petitioner need not prove that he had meritorious grounds for an appeal. *Id.* at 571. However, a petitioner may waive his appellate rights if it is done through a knowing, voluntary, and intelligent waiver. *Interest of J.J.*, 656 A.2d 1355, 1357 (Pa. 1995).

****

[Knight] testified at his PCRA hearing that Attorney Reiner did not say anything about [Knight] losing his appellate rights. The written guilty plea colloquy and the court's oral colloquy at the time of the guilty plea, together with Attorney Reiner's testimony at the PCRA hearing, do not support that conclusion. [Knight] admitted to reviewing the written guilty plea colloquy. In the written colloquy and on the record, [Knight] stated that [he] understood [he] was giving up [his] appellate rights. Based on the court's review of the guilty plea proceeding and the PCRA [hearing] testimony, the court is satisfied that [Knight] was duly and timely informed of [his] appellate rights.

**The court is in doubt regarding whether [Knight] or his mother directly requested that Attorney Reiner file an appeal or post-sentence motion.** Having previously indicated that he understood his appellate rights, [Knight's] testimony regarding his post-sentence discussion with Attorney Reiner was too vague and unspecific to establish a request was made. Additionally, the circumstances surrounding the hallway conversation following the sentencing of her son, who she testified she would "absolutely" do anything for (*Id.* at 40), leaves a substantial degree of uncertainty in regards to the accuracy of Ms. Knight's testimony. While the court will refrain from speculating on any improprieties in their testimony, the consistency of their assertions regarding Attorney Reiner's stating that any post-sentence filing would anger the court and lead to an increased sentence, coupled with Attorney Reiner's subsequent testimony refuting such a statement, leaves the court doubting the authenticity of some testimony as well. **The court finds Attorney Reiner's testimony to be credible, including her indication that had [Knight], or his mother, directly requested she file a post-sentence motion or appeal, it**

- 11 -

**would have been customary for her to speak with [Knight] at a later more appropriate time.**

In sum, [Knight] has not proved by a preponderance of the evidence that a request was made to Attorney Reiner to file a direct appeal within the 30 day appeal period following [Knight's] guilty plea.

PCRA Court Opinion, 9/23/2016, at 3-6 (emphasis added).

It is well settled that "[t]he PCRA court's credibility determinations are binding on this Court, where the record supports those determinations." *Commonwealth v Widgins, supra*, 29 A.3d at 820. *See also Commonwealth v. Dennis*, 17 A.3d 297, 305 (Pa. 2011) (PCRA court's credibility determinations, if supported by the record, are binding on a reviewing court). Our review confirms that the PCRA court's findings and determinations are supported by the record, and therefore, we must accept them. Accordingly, Knight's claim that trial counsel failed to file a requested appeal fails.

Knight also argues in his brief that "Knight has shown, at least, that he 'reasonably demonstrated to counsel that he was interested in appealing' and thus, that his counsel was ineffective for not filing a direct appeal." Knight's Brief at 14. Knight argues he suffered prejudice because "[c]ertainly he had a basis to appeal the discretionary aspect of the trial court's sentence." *Id.* at 15. Knight's argument is based on the United States Supreme Court decision, *Roe v. Flores-Ortega*, 528 U.S. 470 (2000).

In ***Flores-Ortega***, the United States Supreme Court held counsel has a constitutionally imposed duty to consult with a defendant when there is reason to think a rational defendant would want to appeal or that the particular defendant reasonably demonstrated to counsel he was interested in appealing. ***Id.*** at 480. To show prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient failure to consult with him about appeal, he would have timely appealed. ***Id.*** at 484.

The PCRA court, in its opinion, detailed how this claim arose after **the Commonwealth** presented a two-fold argument in its **post-hearing** brief that (1) Knight did not establish Attorney Reiner failed to file an appeal as requested, and (2) under ***Flores-Ortega***, Attorney Reiner completed her duties by consulting with Knight regarding his sentence. ***See*** Commonwealth's Counter-Statement of the Questions Presented, 3/24/2016, at 11–12 (unnumbered). Knight filed a reply to the Commonwealth's brief, and responded to the Commonwealth's second argument stating, "***Roe v. Flores-Ortega*** was not raised in either of [Knight's] prior filings, and raises a new issue of prejudice if the court determines [***Flores-Ortega***] controls." Knight's Reply to the Answer of the Commonwealth, 4/11/2016, at 1. Knight argued that trial counsel did not fulfill her duty to consult after sentencing "if this court finds the discussion [on the day of sentencing] ended ambiguously." ***Id.*** at 2. Further, Knight argued he "met the burden to show a 'reasonable probability' that he would have timely appealed absent counsel's deficient

performance" because he "testified he believed Ms. Reiner was going to file the correct paperwork to preserve his right to an appeal." *Id.* Knight requested the PCRA court "first consider" his argument that he made an affirmative request to an appeal, and "[i]n the alternative," that he met the standard under *Roe v. Flores-Ortega*. *Id.* at 3.

The PCRA court concluded "the Commonwealth's Counter-Statement opens the door for the court['s] consideration of the facts in light of the Court's holding in *Roe* [*v. Flores-Ortega*]." PCRA Opinion, 9/23/2016, at 8. The PCRA court found Knight "has at least established that he 'reasonably demonstrated to counsel that he was interested in appealing.'" *Id.* The PCRA court further determined Knight had failed to establish prejudice as required by *Flores-Ortega*, opining: "It cannot be said 'that there (was) a reasonable probability that, but for counsel's deficient failure to consult with his about an appeal, he would have timely appealed.'" *Id.* at 9.

Based on our review, we conclude that, while the PCRA court addressed the issue of counsel's duty to consult under *Flores-Ortega*, the issue may be deemed waived. Furthermore, the issue is meritless.

The petitioner bears the onus of informing the PCRA court that he or she seeks to add claims through an amended petition, and, in response, the court shall freely grant leave to amend where doing so achieves substantial justice consistent with the dictates of Pa.R.C.P. 905(A). *Commonwealth v. Mason*, 130 A.3d 601, 627 (Pa. 2015). Where a petitioner does not include a claim in

his PCRA petition and does not obtain permission to amend his petition to include the claim, the issue is waived. **Commonwealth v. Elliott**, 80 A.3d 415, 430 (Pa. 2013), *cert. denied*, 135 S. Ct. 50 (2014). Here, Knight raised the argument that trial counsel was ineffective for failing to adequately consult with him regarding an appeal after Knight received the Commonwealth's post-hearing brief. Because the claim was raised in Knight's reply brief, and Knight did not obtain permission to amend his petition to include same, the issue may be subject to waiver. **See Commonwealth v. Reid**, 99 A.3d 470, 484 (Pa. 2014) (finding claims raised in unauthorized supplemental petitions waived even though trial court addressed the claims). In any event, the issue is meritless.

In his brief submitted to this Court, Knight argues he demonstrated he was prejudiced because "he received an extensive prison sentence on each count of conviction, with several above-guideline sentences, with his separate convictions running consecutive[ly] to one another" and therefore, he had a basis to challenge the discretionary aspect of the sentence. Knight's Brief at 15.[6]

_____

[6] It bears noting that Knight's sentence was, in fact, comprised of 12 concurrent and two individual sentences at four separate dockets, with the sentence at each docket made consecutive.

Here, no evidence of record shows that, but for counsel's deficient failure to consult with him, Knight would have sought reconsideration of this sentence. As the PCRA court explained:

> … Regardless of whether Attorney Reiner had a duty to follow-up, [Knight's] testimony at his PCRA hearing remains too vague and unsubstantiated to meet the **Roe** [**v. Flores-Ortega**] standard for relief. Although [Knight] stated that he thought Attorney Reiner was going to preserve his appellate right, he lacks any further evidence or testimony to give credence to this assertion. Furthermore, when asked whether it was her understanding that something was going to be filed to preserve [Knight's] appellate rights, [Knight's] mother testified that she did not. (N.T. Post Conviction Relief Hearing p. 39).
>
> In support of [his] argument, [Knight's] Reply [to the Answer of the Commonwealth] cites to the Pennsylvania Superior Court's application of **Roe** [**v. Flores-Ortega**] in **Commonwealth v. Donaghy**, [33 A.3d 12 (Pa. Super. 2011),] stating that the court concluded counsel's failure to follow-up with the defendant "deprived Donaghy of his constitutional right to assistance of counsel on direct appeal." However, the facts of that case are inconsistent with those at bar, as there, defendant wrote to his counsel regarding the next steps to take following sentencing, and here, no action was taken following the date of sentencing.
>
> Considering the ambiguous nature of [Knight's] post-sentence discussion with Attorney Reiner, combined with Ms. Knight's testimony regarding whether she thought [Knight's] appellate rights were going to be preserved and the fact that neither [Knight] nor his mother took any additional action following the date which [Knight] was sentenced, it cannot be said that there was a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.

PCRA Court Opinion, 9/23/2016, at 9.

Our review confirms the PCRA court's credibility determinations and factual findings are supported by the record. Furthermore, we agree with the

PCRA court that **Donaghy** is distinguishable from the facts of this case. Accordingly, even if the issue is not deemed waived, there is no basis upon which to disturb the decision of the PCRA court. Therefore, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2017