J-S11027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL ULYSSES PETERSON | : | |
| | : | |
| Appellant | : | No. 1051 WDA 2019 |

Appeal from the PCRA Order Entered June 3, 2019
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0004070-2014

BEFORE:  NICHOLS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED MAY 07, 2020**

Michael Ulysses Peterson (Appellant) appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

A prior panel of this Court recounted the pertinent facts of this case:

> On February 5, 2014, at approximately 3:00 p.m., Appellant asked his friend, Garrin Ullrich-Stiffler, to drive him, in Appellant's van, to a Sheetz gas station.  At the Sheetz, Appellant met his cousin, Sam Christner, and sold him five bags of heroin for $50.00.  Appellant also sold Ullrich-Stiffler three bags of heroin.  Each of the bags was branded with either "Rich Gang," "Tuna Fish," or "ESPN."  (N.T. Trial, 1/12/16, at 129).
>
> *         *         *
>
> At approximately 5:00 p.m., Sam Christner's girlfriend, Dee Ann Pruett, arrived at the residence she shared with him, and found him sitting unconscious on the bathroom floor.  Christner appeared gray in color, his eyes were closed, and a syringe was on the floor beside him.  Pruett called 911, and Christner was transported to the hospital.  Efforts to revive Christner were unsuccessful, and he was pronounced dead at 5:31 p.m.  Two

bags of heroin stamped "Rich Gang" were found in his front pants pocket. (N.T. Trial, 1/13/16, at 356). Toxicology test results later showed heroin, morphine (a breakdown product of heroin), codeine (another breakdown product), Benadryl, and alcohol in Christner's system, with high levels of heroin and morphine.

\*     \*     \*

On February 6, 2014, police questioned Ullrich-Stiffler about the events of the previous day. Ullrich-Stiffler initially stated that he and Appellant went to Sheetz to find out about a construction job, and that he was not aware of what transpired between Appellant and Christner. After police returned to Ullrich-Stiffler's home with surveillance video from Sheetz, he admitted that he was driving Appellant around to conduct drug transactions, and that Appellant sold drugs to Christner.

Police interviewed Appellant later that day and gave him *Miranda* warnings. Appellant admitted that the nineteen bags of heroin and the cocaine found on his person belonged to him. Appellant indicated that the needles, spoon, string, and bag marked "Paradise Island" belonged to Ullrich-Stiffler, and he explained that, in exchange for heroin, Ullrich-Stiffler sometimes drove him around to sell drugs. Appellant admitted that he sold Christner five bags of heroin stamped "Rich Gang," "Tuna Fish," or "ESPN," the previous day for $50.00 at the Sheetz, and that Ullrich-Stiffler witnessed the transaction. (N.T. Trial, 1/13/16, at 423; *see id.* at 421-23).

*Commonwealth v. Peterson*, 1537 EDA 2016 at 2-4 (Pa. Super. Apr. 5, 2017) (unpublished memorandum) (footnote omitted).

Based on these events, Appellant was charged with Count 1 – possession with the intent to deliver a controlled substance (35 P.S. § 780-113(a)(30)), Count 2 – criminal conspiracy (18 Pa.C.S.A. § 903(a)(1)), and Count 3 – drug delivery resulting in death (18 Pa.C.S.A. § 2506(a)). The PCRA Court detailed the procedural history that followed:

A jury trial occurred on [Appellant]'s case before this [c]ourt from January 11, 2016 to January 15, 2016. [Appellant] was found guilty on all [c]ounts. He was subsequently sentenced on June 2, 2016. Specifically, at Count 3, [Appellant] was sentenced to eight (8) to sixteen (16) years of incarceration. At Counts 1 and 2, [Appellant] was sentenced to two (2) to four (4) years of incarceration concurrent to Count 3. He received credit for time served, and was ordered to undergo a drug and alcohol and trauma-based mental health evaluation. [Appellant] filed Post-Sentence Motions on June 9, 2016, which were denied by this [c]ourt on September 28, 2016.

[Appellant] thereafter filed a [n]otice of [a]ppeal with the Pennsylvania Superior Court on October 7, 2016. [Appellant] presented the following issues on appeal:

1. Whether the [trial court] erred in making certain evidentiary rulings at trial[?]

2. Whether the [trial court] erred [in] denying [Appellant]'s requested jury instruction[?]

3. Whether [] Appellant was entitled to relief for discovery violations by the Commonwealth[?]

4. Whether the Commonwealth presented sufficient evidence to sustain a verdict of guilty[?]

*Commonwealth v. Peterson*, No. 1537 WDA 2016, at 5 (Pa. Super. [] 2017) (unpublished memorandum). The Pennsylvania Superior Court held that issues 1, 2, and 3 were waived. *Id.* at 5-9. Specifically, it found that issue[s] 1 and 3 were waived because [Appellant] failed to properly brief them. *Id.* at 5-6, 8-9. It also found that issue 2 was waived because [Appellant] failed to properly object to the jury instruction that he was challenging. *Id.* at 6-7. The Pennsylvania Superior Court did, however, review [Appellant]'s sufficiency of the evidence claim and his judgment of sentence was affirmed on April 5, 2017. *Id.* at 15. [Appellant] thereafter filed a [p]etition for [a]llowance of [a]ppeal with the Pennsylvania Supreme Court, which was denied on August 29, 2017.

Subsequently, [Appellant] timely filed a *pro se* PCRA [p]etition on May 14, 2018. . . . Attorney Emily Smarto was appointed as

PCRA Counsel for [Appellant] and was directed to file an [a]mended [p]ost-[c]onviction [p]etition or **Turner/Finley** [n]o [m]erit letter within forty-five (45) days from the date in which she received the appointment order. **See** [**Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*)]. [PCRA Counsel] filed an [a]mended PCRA [p]etition. In the [a]mended [p]etition, Attorney Smarto argues the following:

    a. [Trial] Counsel was ineffective in the direct appeal process. The Superior Court deemed he had waived three of his four arguments as they were "not appropriately developed." As a result, meritorious issues were not reviewed by the Superior Court; counsel's actions lacked any reasonable basis; and counsel's actions resulted in prejudice to [Appellant]. There is a reasonable probability that, but for counsel's constitutionally deficient performance, the outcome of the proceeding would have been different.

    b. [Trial] Counsel was ineffective at trial for failing to object to the jury instruction relative to Drug Delivery Resulting in Death and/or not requesting the standard jury instruction 15.2506.

    c. [Trial] Counsel was ineffective at trial for failing to lodge objections relative to cause of death/and autopsy reports/and testimony of Dr. Cyril Wecht.

    4. [Trial] Counsel was ineffective for failing to strategically attack the causal connection necessary for guilty beyond a reasonable doubt.

[Appellant]'s Amended PCRA Petition, [8/13/18], [at] 3-4 (unnumbered). In response to PCRA Counsel's [a]mended PCRA [p]etition, this [c]ourt directed that an [e]videntiary [h]earing be scheduled on [Appellant]'s case.

An [e]videntiary [h]earing occurred before this [c]ourt on J[anuary] 24, 2019. At the conclusion of the hearing, [Appellant] was directed to submit a brief in support of his PCRA [petition] within thirty (30) days and the Commonwealth was directed to submit a response to [Appellant]'s brief within thirty (30) days thereafter. [Appellant] filed a brief in support of his PCRA

- 4 -

[p]etition on March 29, 2019. The Commonwealth field a brief in opposition to [Appellant]'s PCRA [p]etition on April 29, 2019.

PCRA Court Opinion and Order, 6/3/19, at 1-4 (footnote omitted).

On June 3, 2019, the PCRA court issued an opinion and order in which it denied Appellant's PCRA petition. This timely appeal followed.

On appeal, Appellant presents the following issues for review:

I.   WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN THE DIRECT APPEAL PROCESS?

II.  WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE JURY INSTRUCTION RELATIVE TO DRUG DELIVERY RESULTING IN DEATH AND/OR NOT REQUESTING THE STANDARD JURY INSTRUCTION?

[III]. WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CONSULT WITH OR RETAIN A FORENSIC PATHOLOGIST?

Appellant's Brief at 4.

We review the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." *Id.*

For his first issue, although far from artfully crafted or fully developed, Appellant argues that Trial Counsel was *per se* ineffective in representing Appellant on direct appeal because this Court found three of Appellant's four

issues waived. Thus, Appellant asserts he is entitled to reinstatement of his direct appeal rights.

With respect to ineffective assistance of counsel, our Supreme Court has explained:

> Generally, an accused asserting that he has been denied his constitutional right to effective assistance of counsel must demonstrate that counsel engaged in errors which caused him prejudice – *i.e.*, that there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different. In Pennsylvania, we have set forth . . . a three-part test, requiring an accused to show that (1) his underlying claim is of arguable merit; (2) counsel's action or inaction lacked a reasonable strategic basis; and (3) but for counsel's conduct, there is a reasonable probability that the outcome of the proceedings would have been different. However, in certain limited circumstances, including the actual or constructive denial of counsel, prejudice may be so plain that the cost of litigating the issue of prejudice is unjustified, and a finding of ineffective assistance of counsel *per se* is warranted.

*Commonwealth v. Rosado*, 150 A.3d 425, 429-30 (Pa. 2016) (quotations and citations omitted).

In *Commonwealth v. Lantzy*, 736 A.2d 564 (Pa. 1999), our Supreme Court held that counsel's failure to file a direct appeal when an appellant requests counsel to do so "falls within a narrow category of circumstances in which prejudice is legally presumed." *Id.* at 571. In *Commonwealth v. Liebel*, 825 A.2d 630 (Pa. 2003), the Pennsylvania Supreme Court extended the concept of *per se* ineffective assistance of counsel to the failure of counsel to file a petition for allowance of appeal to the Supreme Court when an appellant requests counsel to do so. Subsequently, in *Commonwealth v.*

*Halley*, 870 A.2d 795 (Pa. 2005), our Supreme Court held that counsel's failure to file a court-ordered statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), which resulted in the waiver of all claims on appeal, was *per se* ineffective assistance of counsel.

Recently, in **Rosado**, our Supreme Court considered a situation where counsel presented only waived issues in the appellant's appellate brief:

> [T]he filing of a brief that raises only waived issues . . . is . . . akin to failing to file documents perfecting an appeal. There is no meaningful difference between an attorney who fails to file a notice of appeal, Rule 1925(b) statement, brief, or petition for allowance of appeal – thereby forfeiting his client's right to appeal – and one who makes all necessary filings, but does so relative solely to claims he has not preserved for appeal, producing the same end. In both situations, counsel has forfeited all meaningful appellate review.

**Rosado**, 150 A.3d at 434. Importantly, the Supreme Court explained "that maintaining the distinction between errors causing waiver of all claims and those failing to preserve particular claims appropriately prevented the exceptional doctrine of ineffective assistance of counsel *per se* from engulfing the general rule that an accused must demonstrate that counsel's errors caused him prejudice." **Id.** at 431-32.

In this case, the record does not reflect any instances of *per se* ineffective assistance of counsel. Although Appellant is correct that the Superior Court found three of the four issues Trial Counsel presented on direct appeal to be waived, this Court nonetheless conducted a merits review of Appellant's fourth issue. Thus, Trial Counsel's actions did not result in

Appellant completely forfeiting his right to meaningful appellate review. *See Rosado*, 150 A.3d at 434. We find no merit to Appellant's first issue.

Appellant's second and third issues also invoke ineffective assistance of counsel. Our Supreme Court has stated:

> It is well-settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. *Commonwealth v. Cooper*, 941 A.2d 655, 664 (Pa. 2007). To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, "that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." *Id.* A PCRA petitioner must address each of these prongs on appeal. *See Commonwealth v. Natividad*, 938 A.2d 310, 322 (Pa. 2007) (explaining that "appellants continue to bear the burden of pleading and proving each of the . . . elements on appeal to this Court"). A petitioner's failure to satisfy any prong of this test is fatal to the claim. *Cooper*, 941 A.2d at 664.

*Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018) (citations modified).

In his second issue, Appellant argues that Trial Counsel was ineffective for failing to object to the jury instruction on the drug delivery resulting in death charge and for failing to request the standard instruction on the charge. "Jury instructions are to be evaluated as a whole . . . and the trial court possesses broad discretion in phrasing such instructions, so long as the directions as given clearly, adequately, and accurately reflect the law[.]" *Commonwealth v. Gibson*, 951 A.2d 1110, 1142 (Pa. 2008).

The jury instruction Appellant challenges reads:

- 8 -

[Appellant] has been charged with delivering drugs that resulted in the death of a person. To find [Appellant] guilty of this offense, you must find the following elements have been proven beyond a reasonable doubt.

First, that [Appellant] administered, dispensed, delivered, gave, prescribed, sold or distributed a controlled substance to Samuel Christner.

Second, that [Appellant] did so intentionally; that is, that it was his conscious object to administer, dispense, deliver, give, prescribe, sell or distribute a controlled substance to Samuel Christner.

Third, that the administration, dispense, delivery, prescription, s[ale], or distribution was in violation of the Controlled Substance Drug, Device and Cosmetic Act.

Fourth, that Samuel Christner died as a result of using the substance. To find this element, you must find that, without having ingested the heroin, Samuel Christner would not have died.

N.T., 1/11/16 – 1/15/16, at 773-74.

Section 2506 of the Pennsylvania Crimes Code defines the crime of drug delivery resulting in death as follows:

> **(a)** **Offense defined.--**A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S.A. § 2506(a) (footnote omitted). As this Court has explained, Section 2506 "consists of two principal elements: (i) [i]ntentionally administering, dispensing, delivering, giving, prescribing, selling or distributing any controlled substance or counterfeit controlled substance and

- 9 -

(ii) death caused by ('resulting from') the use of that drug." ***Commonwealth v. Kakhankham***, 132 A.3d 986, 991-92 (Pa. Super. 2015) (citation and footnote omitted).

Appellant argues that Trial Counsel should have challenged the trial court's failure to include the language in the instruction that "but-for" the use of the controlled substance, the victim would not have otherwise died. ***See*** N.T., 1/11/16 – 1/15/16, at 674. We disagree. Based upon our review of the instruction the trial court read to the jury and the authority defining the crime of drug delivery resulting in death, we conclude that the instruction the trial court provided "clearly, adequately, and accurately reflect[ed] the law[.]" ***See Gibson***, 951 A.2d at 1142. Moreover, we discern no meaningful distinction between the instruction the trial court read to the jury and the "but for" language Appellant asserts the court should have included in its instruction. Therefore, Appellant's second issue lacks arguable merit, and the PCRA court did not err in denying this ineffective assistance of counsel claim.

In his final issue, Appellant argues that Trial Counsel was ineffective because he failed to retain a forensic pathologist to testify as an expert at trial regarding Christner's cause of death. During the Commonwealth's case-in-chief, Cyril H. Wecht, M.D. (Dr. Wecht), testified that Christner died from a heroin overdose. N.T. 1/11/16 – 1/15/16, at 249. Trial Counsel offered the testimony of a forensic toxicologist to counter Dr. Wecht's testimony.

Appellant asserts that only a forensic pathologist could have successfully rebutted Dr. Wecht's testimony.

We conclude that the PCRA court did not err in denying this claim, as Trial Counsel had a reasonable basis for deciding to call a forensic toxicologist, as opposed to a forensic pathologist, at trial. At the PCRA hearing, Trial Counsel testified that he had a forensic toxicologist rather than a forensic pathologist testify because a toxicologist has specific expertise concerning the effects of opiates on the human blood system. **See** N.T., 1/24/19, at 13-15.

Regarding the reasonable basis prong of the ineffective assistance of counsel test, our Supreme Court has explained:

> Relating to the reasonable basis prong, [g]enerally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. Courts should not deem counsel's strategy or tactic unreasonable unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

***Commonwealth v. Koehler***, 36 A.3d 121, 132 (Pa. 2012) (citations omitted).

At Appellant's PCRA hearing, Trial Counsel gave the following testimony regarding his strategy for rebutting Dr. Wecht's testimony:

Q. [Trial Counsel], let's talk a little bit about your trial strategy.

A. Yes.

Q. Did you hire any experts in terms of helping you with this case?

- 11 -

A.    Yes.  As I said previously, we were really trying to attack the causation aspects of this because, quite frankly, the facts underlying the actual delivery were very strong for the Commonwealth and the only real defense was to say that the drugs that [Appellant] had provided to the victim was not the "but for" cause of his death.  And so we were trying to explore whatever other possible causes there could be.  And so I felt it would be appropriate to bring in a toxicologist to testify along those lines.

Q.    And you felt toxicology would be important to your defense?

A.    Absolutely, yes.

Q.    Did you ever consider whether you thought you would need a forensic pathologist as an expert in this particular case?

A.    Not really, because I felt that the toxicologist was the appropriate type of expert in this situation because they would have the expertise relevant above and beyond what a forensic pathologist may have with respect to the effects of certain chemicals on the human body, whereas the forensic pathologist, it's more generic.  In fact, during the trial, I have a recollection of how Dr. Wecht had testified about how he relies on toxicologists in forming his opinions as a forensic pathologist.

Q.    So, your strategy going into the trial was to focus on toxicology?

A.    Essentially, yes.

Q.    Did it concern you in any way that you may not be able to combat the cause of death because you didn't have a forensic pathologist?

A.    Not really, no.  Because I felt that the toxicologist would be able to say this is a lethal dose of whatever substance, above a certain amount it gets into the toxic range and what have you.  So I felt a toxicologist was certainly competent to testify as to, not necessarily the cause of death of an individual, but could say that someone could survive having a certain amount of opiates in their system and there's a

certain window where it becomes toxic and things of that nature. I just felt toxicology was sufficient.

N.T., 1/24/19, at 13-15.

Other than bald assertions, Appellant offers no explanation or support for how a forensic pathologist, rather than a forensic toxicologist, would have offered Appellant a potential for success substantially greater than the course Trial Counsel pursued. *See Koehler*, 36 A.3d at 132. Therefore, the record reflects that Trial Counsel provided the PCRA court with a reasonable basis for his decision to have a forensic toxicologist rebut the testimony of Dr. Wecht, and Appellant provides no basis for us to conclude otherwise. Accordingly, the PCRA court did not err in denying this ineffective assistance of counsel claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/2020