J.S13042/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
        Appellee : 
:
        v. :
:
JOSHUA YINGLING, :
:
        Appellant : No. 1484 WDA 2015

Appeal from the PCRA Order September 14, 2015
in the Court of Common Pleas of Allegheny County Criminal Division
at No(s): CP-02-CR-0002047-2013

BEFORE: LAZARUS, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED FEBRUARY 11, 2016**

Appellant, Joshua Yingling, appeals from the order entered in the

Allegheny County Court of Common Pleas denying his first Post Conviction

Relief Act[1] ("PCRA") Petition, following an evidentiary hearing.  We affirm.

The facts are unnecessary for our disposition.  The trial court

summarized the procedural posture of this case as follows:

> After a jury trial, [Appellant] was convicted of conspiracy
> to commit robbery, four counts of recklessly endangering
> another person, and fleeing and eluding.  He was also
> convicted of six summary offenses.  He was sentenced to a
> term of imprisonment of not less than 36 months nor more
> than 72 months relative to the conspiracy conviction.  He
> was also sentenced to a consecutive term of imprisonment
> of not less than six months nor more than 12 months
> relative to the fleeing and eluding conviction.  Relative to

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

the four recklessly endangering counts, he was sentenced to four consecutive terms of imprisonment of not less than one month nor more than six months. No appeal was filed. [Appellant] filed a *pro se* petition for relief under the [PCRA]. Counsel was appointed and on February 25, 2015, . . . filed an amended petition pursuant to the [PCRA] claiming that [Appellant's] prior counsel rendered ineffective assistance of counsel for failing to file a post-sentencing motion or a direct appeal challenging the sentence imposed in this case.

PCRA Ct. Op., 11/5/15, at 1. The PCRA court found that counsel did not render ineffective assistance and denied the petition. This timely appeal followed. Appellant filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the PCRA court filed a responsive opinion.

Appellant raises the following issue for our review:

Did the trial court err in denying Appellant's PCRA petition and in failing to reinstate Appellant's post sentence rights since trial/sentencing counsel [Anne Marie] Mancuso was ineffective for failing to discuss or file post sentencing motions ("PSM")/an appeal, and for misinforming Appellant regarding the length of the instant aggregate sentence, when Appellant desired that PSM and an appeal be filed regarding the sentence imposed, and attempted to have counsel file PSM?

Appellant's Brief at 3.

Appellant avers that counsel's failure to file a direct appeal is the functional equivalent of not having counsel and therefore his appellate rights should be reinstated *nunc pro tunc*. **Id.** at 11. Appellant claims that "he believed that he was only sentenced to 3-6 years' imprisonment, and didn't

understand that he had received consecutive sentences."[2] *Id.* at 12. Appellant contends that he "wanted post sentencing motions filed so that he could challenge the instant sentence, and he even had his mother call Trial Counsel 3-5 times in the coming week (within the 10 day period within which to file post sentencing motions after imposition of sentence) so that post sentencing motions could be timely filed for [him]." *Id.* at 13. Appellant states that trial counsel's contention that she spoke with him in the hallway following sentencing is impossible because he was not taken out into the hallway after sentencing. *Id.* He avers that he was taken directly through a rear door in the courtroom to the bullpen.[3] *Id.* Appellant argues

---

[2] We note that at sentencing, the court explained the sentences were consecutive "because I think it needs to be acknowledged the extent of your harmful and dangerous conduct while on probation, violent conduct." N.T. Sentencing Hr'g, 5/13/14, at 16. The court informed Appellant that his sentence was 46 months minimum, with all credit for time served, to 108 months. *Id.* at 17. The court advised Appellant that he had the right to file a post sentence motion within ten days. *Id.* at 18. The court further stated:

> If you wish to assert your post-sentencing rights, you speak to Ms. Mancuso. She knows what to do. If Ms. Mancuso's unavailable—10 days to file the motion or a direct appeal in 30 days.
>
> If Ms. Mancuso is unavailable and you wish to assert your rights but cannot afford another lawyer, you let the [c]ourt know and I'll see to it that a lawyer's appointed for you on your behalf.

*Id.*

[3] We note at the PCRA hearing, the court stated:

that he "lost his post sentencing rights because of Trial Counsel's ineffectiveness and, therefore, the Trial Court erred in not reinstating [his] post sentencing rights." *Id.* at 13-14.

Our review is governed by the following principles:

> Our scope of review when examining a PCRA court's denial of relief is limited to whether the court's findings are supported by the record and the order is otherwise free of legal error. We will not disturb findings that are supported by the record.
>
> Furthermore, as Appellant's issue is stated in terms of ineffectiveness of counsel, Appellant must show that: (1) his claim has arguable merit; (2) counsel's performance had no reasonable basis; and (3) counsel's action or inaction worked to Appellant's prejudice. The PCRA standard regarding a claim of ineffective assistance of counsel is the same as the standard on direct appeal.
>
> *       *       *
>
> However, the case of a petitioner who was denied a requested direct appeal by the ineffectiveness of his trial or plea counsel presents a special problem of constitutional dimension. In **Commonwealth v. Lantzy**, [ ] 736 A.2d 564 ([Pa.] 1999), our Supreme Court resolved this problem as follows:
>
> > [W]here there is an unjustified failure to file a **requested direct appeal**, the conduct of counsel falls beneath the range of competence demanded of

---

This courtroom is right next to the area which is the entrance to what we call the bull pen. In this courtroom, unlike any other I think, the Defendant can be taken from this room through that back door through the entrance to the bull pen without going out into the hallway . . . .

N.T. PCRA Hr'g, 9/14/15, at 12. Ms. Mancuso testified that she talked to Appellant in the hallway outside of the courtroom. *Id.* at 13.

> attorneys in criminal cases, [denying] the accused
> the assistance of counsel guaranteed by the Sixth
> Amendment to the United States Constitution and
> Article I, Section 9 of the Pennsylvania Constitution,
> and constitutes prejudice. . . . Therefore, in such
> circumstances, and where the remaining
> requirements of the PCRA are satisfied, the petitioner
> is not required to establish his innocence or
> demonstrate the merits of the issue or issues which
> would have been raised on appeal.
>
> *Id.* . . . 736 A.2d at 572 (footnotes and citations omitted).
> Counsel's unjustified failure to file a direct appeal will
> constitute prejudice *per se* under ***Lantzy***, **if the
> petitioner can establish that he did ask counsel to
> file an appeal**.

***Commonwealth v. Qualls***, 785 A.2d 1007, 1009-10 (Pa. Super. 2001)

(some citations omitted and emphases added).

However, "counsel's failure to file post-sentence motions does not fall

within the narrow ambit of ineffectiveness claims requiring no finding of

prejudice." ***Commonwealth v. Fransen***, 986 A.2d 154, 158 (Pa. Super.

2009). "The PCRA court's credibility determinations, when supported by the

record, are binding on this Court." ***Commonwealth v. Spotz***, 18 A.3d 244,

259 (Pa. 2011).

Instantly, the PCRA court opined:

> Counsel did not render ineffective assistance of counsel
> in this case. The [c]ourt finds the testimony of trial
> counsel to be credible. This [c]ourt believes that
> [Appellant] believed his sentence was reasonable and he
> conveyed that fact to trial counsel. [Appellant] was
> advised of his right to challenge his sentence by this
> [c]ourt immediately after sentence was imposed and he
> discussed his specific sentence and his ability to challenge
> it with trial counsel after sentencing was concluded.

PCRA Ct. Op. at 3-4.

Appellant testified at the PCRA hearing that he wanted to challenge his sentence. N.T. at 5. He testified, *inter alia*, as follows:

> [Appellant's counsel]: Did you talk to Ms. Mancuso, did you talk to anybody at that point immediately after you were sentenced or afterwards?
>
> A: No. On the way leaving the courtroom I asked her what my sentence was because I really didn't understand. She was grabbing her jacket and she had told me that it was three to six years and I thought that that was what I was getting.
>
> Then I asked her what was going on and she was kind of rushing and I got rushed out of the courtroom and I never spoke with her after that.
>
> Q: Did she—before she left or any time thereafter did she explain your post-sentencing rights or your appellate rights?
>
> A: No.
>
> Q: So you didn't know that you had ten days to file post-sentencing motions?
>
> A: No.
>
> Q: Thirty days to file an appeal?
>
> A: No.
>
> Q: Did you want post-sentencing motions filed?
>
> A: Yes, I did.
>
> Q: If she had spoken to you, would you have expressed to her that you wanted post-sentencing motions?
>
> A: For sentencing reasons, yes.

Q: Did you attempt to get in touch with her in the ten-day period after you were sentenced?

A: My mother did, yes.

Q: And what happened as far as you know?

A: She called her I think—she said between three to five times within the first week after I got sentenced because when I got back to the county that night my sentence was entered into the computer, and I do believe that it said 46 to 108 months, and I was under the impression that it was going to be 36 to 108 months so—

Q: Do you know—did your mom leave messages, did your mom—

A: She contacted twice and she got through once and I guess that there was someone that said that she wasn't in the office. The other two times she could not get ahold of her and I wrote two letters but—

Q: Did you know what your mom said in those messages?

A: I don't know exactly what my mother said in those messages, but I do know that she had told them that it was—the only one time message that she had told them that I need to speak with her immediately about my sentence.

Q: But you definitely wanted post-sentencing motions or an appeal filed?

A: Yes.

*Id.* at 5-7.

Ms. Mancuso testified at the PCRA hearing, *inter alia*, as follows:

[Appellant's counsel]: Did you get a chance to talk to [Appellant] after sentencing about post-sentencing motions or an appeal?

A: I spoke with him immediately following his sentence. We spoke about the fact that we both thought that it was fair and he said that to me in the hallway. We talked about what his options were, exactly what he said, in the hallway and immediately following sentencing.

Q: So you walked out—he was in handcuffs?

A: He was taken into custody at that time.

Q: You walked to the bull pen, towards the bull pen with him.

Q: Yes.

Q: That's where this conversation took place?

A: Yes, right in the hallway.

Q: And did you explain to him that he had ten days to file post-sentencing motions?

A: I can't recall what exactly was said in that conversation, but I remember us discussing what his sentence was and whether or not he wanted to challenge the sentence and us agreeing that it was fair and I never heard from him again after that.

Q: Did you tell him he had a right to challenge that sentence?

A: Yes, absolutely.

Q: And did you tell him the length of the sentence?

A: Yes. We talked about that as well.

*    *    *

Q: Did you receive any telephone messages from his mother or anyone else?

A: I believe that I spoke to his mother actually and I believe that she just had questions about what the next

step was as far as where he was going to be transferred and the length of his sentence and I believe we went over that, **but at no time did anyone ask me to file any sort of post-sentence motion. Otherwise I would have.**

*Id.* at 9-10 (emphasis added). On cross-examination by the Commonwealth, she testified as follows:

[The Commonwealth]: . . . Do you have a specific recollection in talking to [Appellant] about his appellate rights?

A: Yes, because it was immediately following the sentence.

Q: And if [Appellant] had asked you to file an appeal for motion to modify sentence what would you have done?

A: I would have absolutely a hundred percent pursued his desire to do that.

*Id.* at 11.

At the conclusion of the hearing, the PCRA court opined:

I hear [Appellant's] testimony, my mother did this, my mother did that, but his mother never came to testify as to what she did or didn't do.

The only person that was a party to the conversation was Ms. Mancuso who did testify that she spoke about what happened next and so forth and nobody said to her what about post-sentencing, let's appeal, let's file a motion . . . .

So the only person that was participating in that conversation in this courtroom was Ms. Mancuso. Mom has not come here.

There is a reason why hearsay is inadmissible. . . . Mom did not come in to say that she had that conversation with Ms. Mancuso and put her on notice on behalf of her

- 9 -

son.  Ms. Mancuso, who was in the conversation, said that that is not what happened.

\* \* \*

Under these circumstances of course [Appellant] would have expected his mom did everything that he wanted her to do, but there is no evidence that she did and there is evidence that she did not from Ms. Mancuso.

\* \* \*

**Ms. Mancuso was here and said, here is what happened, and I find her testimony to be credible** . . . .

*Id.* at 18-20 (emphasis added).

In the case *sub judice*, Appellant avers that he "wanted post sentencing motions filed and [he] lost his post sentencing rights because of Trial Counsel's ineffectiveness and, therefore, the Trial Court erred in not reinstating [his] post sentencing rights."  Appellant's Brief at 13-14.  This claim is unavailing.  *See Fransen*, 986 A.2d at 158; *Qualls*, 785 A.2d at 1010.

The PCRA court found trial counsel's testimony to be credible and concluded she did not render ineffective assistance of counsel.  We find the record supports the PCRA court's credibility determination.  *See Spotz*, 18 A.3d at 259.  Appellant has also not established that he asked counsel to file a direct appeal.  *See Qualls*, 785 A.2d at 1010.  We find the PCRA court's order was supported by the record and free of legal error.  *See id.* at 1009.  Therefore, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2016