J-A11043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
PERRY HENDERSON :
:
Appellant : No. 1258 WDA 2020

Appeal from the PCRA Order Entered October 22, 2020
In the Court of Common Pleas of Cambria County Criminal Division at
No(s):  CP-11-CR-0001879-2015

BEFORE:  McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED: September 8, 2021**

Perry Henderson (Appellant) appeals from the order entered in the Cambria County Court of Common Pleas denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA).[1]  Appellant seeks relief from the judgment of sentence of life imprisonment imposed following his jury conviction of second-degree murder,[2] robbery,[3] conspiracy,[4] and related offenses for the July 2015 shooting death of Thomas Peebles.  On appeal, Appellant asserts prior counsel was ineffective for failing to properly preserve issues on direct appeal, failing to question a defense witness regarding her

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 2502(b).

[3] 18 Pa.C.S. § 3701(a)(1)(i).

[4] 18 Pa.C.S. 903(a)(1).

text messages, and advising Appellant not to call a police detective at trial. Additionally, Appellant contends the PCRA court erred in denying his recusal request and in failing to grant him relief when there were insufficient African-American jurors in his jury pool. For the reasons below, we affirm.

The facts underlying Appellant's conviction, as developed during his jury trial, were summarized in a prior decision of this Court as follows. On July 17, 2015, Appellant, co-defendant Stanley Spriggs, and Kenneth Simmons decided to rob someone.[5] ***Commonwealth v. Henderson***, 728 WDA 2017 (unpub. memo. at 1) (Pa. Super. Nov. 28, 2018), *appeal denied*, 503 WAL 2018 (Pa. May 14, 2019). They drove to Johnstown, where they encountered Robert Hinton, an acquaintance of Spriggs. ***Id.*** Hinton and his girlfriend, Kala Ceryak, arranged for the men to purchase heroin from the victim, Thomas Peebles. ***Id.*** at 1-2. During the early morning hours of July 18th, Hinton accompanied the co-conspirators to a public housing complex where the exchange was to take place. ***Id.*** at 2, 3 n.2. While Spriggs remained in the vehicle, Appellant, Simmons, and Hinton entered the complex. ***Id.***

> Mr. Hinton testified that shortly after Mr. Peebles showed the heroin, Mr. Hinton felt Simmons place a gun against the back of his head. He also saw Appellant holding a gun to Mr. Peebles's chest. Fearing for his life, Mr. Hinton ran . . . up the [stairwell]. He heard a scuffle, followed by a gunshot. Video surveillance from

---

[5] Co-conspirator Simmons pled guilty to third-degree murder and testified for the Commonwealth at Appellant's and Spriggs' trial. ***See*** N.T., 2/17/17, at 114-15. The jury was informed that, as part of the plea agreement, the Commonwealth agreed to recommend a sentence of 11 to 25 years' imprisonment. ***See id.*** at 115.

inside the stairwell was played at trial, and showed Mr. Peebles, Simmons, and Appellant struggling. Although firearms are visible in the video, the actual shooting is not captured on camera, as the parties had fallen to the ground outside of the camera's view. Appellant and Simmons fled, taking the heroin with them. Mr. Hinton came back down the steps shortly thereafter and called 911.

*Id.* at 2-3.

Peebles later died from a gunshot wound to the head. **Henderson**, 728 WDA 2017 (unpub. memo. at 3). Appellant and his co-conspirators fled in a vehicle, which was subsequently stopped by Cresson Township police. **Id.** At the time of his arrest, Appellant was in possession of 90 bags of heroin. **Id.** After obtaining a search warrant for the vehicle, police recovered two loaded firearms, one of which was the murder weapon. **Id.** at 3-4.

Appellant was subsequently charged with second- and third-degree murder, robbery, conspiracy (three counts), aggravated assault (two counts), possession with intent to deliver controlled substances, and possession of controlled substances.[6] Appellant's and Spriggs' cases were consolidated for trial. **See** Order, 4/5/16. On June 1, 2016, Appellant's counsel filed a motion to withdraw after receiving a request by Appellant to proceed *pro se*. **See** Motion to Withdraw as Counsel of Record, 6/1/16, at 2 (unpaginated). The trial court conducted a **Grazier**[7] hearing on June 10, 2016. Finding Appellant's request to proceed *pro se* was "knowingly, voluntarily, and intelligently made,"

---

[6] 18 Pa.C.S. §§ 2502(c), 2702(a)(1), (4); 35 P.S. § 780-113(a)(16), (30).

[7] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988).

the trial court entered an order granting Appellant's request, and appointing David Beyer, Esquire, as standby counsel. Order, 6/10/16, at 1.

The case proceeded to jury selection commencing on February 13, 2017. After the Commonwealth rested its case-in-chief on the fifth day of trial, Appellant asked the court to allow Attorney Beyer to take over the case. *See* N.T., 2/20/17, at 66. Attorney Beyer explained that he would "do the direct examination of [their only] witness and do the closing" argument. *Id.* at 67. He also informed the court that although he advised Appellant to testify on his own behalf, Appellant stated he did not want to take the stand.[8] *Id.* at 69-70. The court granted Appellant's request, and Attorney Beyer represented Appellant for the remainder of the trial. *See id.* at 78. On February 21, 2017, the jury found Appellant guilty of all charges, with the exception of third-degree murder.[9] The trial court sentenced Appellant to an aggregate term of life imprisonment on May 1, 2017.

Attorney Beyer continued to represent Appellant, and filed a timely notice of appeal. On November 28, 2018, a panel of this Court affirmed Appellant's judgment of sentence, and the Pennsylvania Supreme Court subsequently denied his petition for *allocatur* review on May 14, 2019. *See* ***Henderson***, 728 WDA 2017, *appeal denied*, 503 WAL 2018.

---

[8] Appellant confirmed this upon questioning by the trial court. *See* N.T., 2/20/17, at 71-72.

[9] Spriggs was also found guilty of second-degree murder, robbery, aggravated assault, and conspiracy (three counts). *See* N.T., 2/21/17, at 107-08.

On May 8, 2020, Appellant filed a timely, *pro se*, PCRA petition. Tim Burns, Esquire, was appointed to represent Appellant. On August 24, 2020, Attorney Burns filed an amended petition, and the PCRA court conducted a hearing on October 19th. On October 22nd, the court denied Appellant's petition. This timely appeal followed.[10]

Appellant raises five claims on appeal:

1. Whether the [t]rial [c]ourt erred in finding that . . . Appellant's prior appellate counsel was not ineffective in failing to properly preserve his appellate issues for review?

2. Whether the [t]rial [c]ourt erred in finding that . . . Appellant's prior counsel was not ineffective in failing to properly question defense witness [Kala[11]] Ceryak?

3. Whether the [t]rial court erred in finding that . . . Appellant's prior counsel was not ineffective in directing . . . Appellant to not call Johnstown Police Sgt. Douglas Komar to testify (in order to contradict conclusions made in Pennsylvania State Trooper Mark A. Galli's Investigative Report . . . dated December 12, 2016)?

4. Whether the [t]rial [c]ourt erred in failing to grant . . . Appellant's on-going request to recuse the entire Cambria County Bench from presiding over his proceedings?

5. Whether the [t]rial [c]ourt erred in failing to grant . . . Appellant post-conviction relief on the issue of the [c]ourt failing to provide him with an ample and constitutionally acceptable number of African-Americans in the Jury Pool?

---

[10] Although the PCRA court did not order him to do so, Appellant filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on November 23, 2020.

[11] Although Appellant refers to this witness as "Kayla," she spelled her first name "K-A-L-A" during her direct examination at trial. *See* N.T., 2/20/17, at 80.

Appellant's Brief at 4.

Preliminarily, we note our well-settled standard of review:

"On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error." "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions."

***Commonwealth v. Williams***, 196 A.3d 1021, 1026–27 (Pa. 2018) (citations omitted). Furthermore, when a petitioner alleges the ineffective assistance of prior counsel, we must bear in mind:

Counsel is presumed to have been effective. In order to overcome that presumption and prevail on a claim of ineffectiveness, Appellant must establish that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that because of the act or omission in question, the outcome of the proceeding would have been different. In determining whether trial counsel's actions or omissions were reasonable, the question is not whether there were other more logical courses of action he or she could have pursued; rather, the question is whether counsel's decisions had any reasonable basis.

***Commonwealth v. Hand***, 252 A.3d 1159, 1166 (Pa. Super. 2021) (citations omitted).

Nevertheless, where, as here, Appellant represented himself for most of the trial, the Pennsylvania Supreme Court has made clear that an appellate court "will not consider any ineffectiveness claims that arise from the period of self-representation," even when a defendant is assisted by standby counsel. ***Williams***, 196 A.3d at 1027 (citation omitted). "When a defendant elects to

proceed at trial *pro se*, the defendant — and not standby counsel — is in fact counsel of record and is responsible for trying the case." ***Id.*** at 1029 (citation omitted). Accordingly, we will not permit an ineffectiveness claim lodged at standby counsel, unless standby counsel "interfered with [the defendant's] right of self-representation[.]" ***Id.*** at 1030.

In his first issue, Appellant contends direct appeal counsel was ineffective for failing to "properly raise post-sentence issues for appellate review." Appellant's Brief at 9. Accordingly, he requests "reinstatement and/or reconsideration of his post-sentence motions, as **every** issue raised by his prior counsel was denied by the Superior Court" on direct appeal. ***Id.*** at 13. In support of his claim, Appellant relies on ***Commonwealth v. Lantzy***, 736 A.2d 564 (Pa. 1999), ***Commonwealth v. Johnson***, 889 A.2d 620 (Pa. Super. 2005), ***Commonwealth v. West***, 883 A.2d 654 (Pa. Super. 2005), and ***Commonwealth v. Franklin***, 823 A.2d 906 (Pa. Super. 2003). No relief is due.

Attorney Beyer raised twelve allegations of error on direct appeal. ***See Henderson***, 728 WDA 2017 (unpub. memo. at 5-6). While the ***Henderson*** panel commented that a brief asserting more than 10 issues raises a presumption that there is "no merit to **any** of them," it proceeded to address each of the issues on the merits. ***See id.*** at 7 n.3. Significantly, in rejecting each claim, the panel did not conclude any of the issues were waived or underdeveloped by counsel. ***See id.*** at 7-28. Thus, Appellant's present claim — although couched in terms of prior counsel's ineffectiveness — is simply an

attempt to relitigate the issues this Court previously rejected on direct appeal. This is not permissible under the PCRA. **See** 42 Pa.C.S. §§ 9543(a)(3) (in order to obtain PCRA relief, a petitioner must plead and prove, *inter alia*, "[t]hat the allegation of error has not been previously litigated"), 9544(a)(2) (an issue is previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue").

Furthermore, the decisions upon which Appellant relies are readily distinguishable. In each of those cases, counsel's actions or inactions constructively deprived the petitioner of a direct appeal. **See Lantzy**, 736 A.2d at 572 (counsel lacked reasonable basis for **withdrawing** requested, perfected direct appeal); **Johnson**, 889 A.2d at 623 (counsel's defective appellate brief resulted in **waiver** of petitioner's sole claim on direct appeal); **West**, 883 A.2d at 657 (counsel's "unjustified failure to file [Pa.R.A.P. 1925(b)] Concise Statement represents a **complete or constructive denial** of counsel") (emphasis added); **Franklin**, 823 A.2d at 910 (counsel's defective appellate brief resulted in appellate court **quashing** direct appeal). Here, counsel properly filed a direct appeal and preserved all issues for review. Although this Court subsequently affirmed the judgment of sentence, it did so based on the merits (or lack thereof) of Appellant's claims. Thus, his first issue fails.

Next, Appellant argues Attorney Beyer was ineffective for "failing to properly question defense witness [Kala] Ceryak . . . relative to a series of

text messages between [her] and her boyfriend[,]" Hinton.[12] Appellant's Brief at 13. He insists the text messages would have undermined Hinton's testimony, and "showed that [he] was a liar and he would do [or] say anything to get out of his situation." *Id.* at 13, 15 (citation omitted).

Although a copy of the alleged text messages is attached to the amended PCRA petition, Appellant did not introduce the text messages into evidence at the PCRA hearing, or attempt to authenticate those messages. *See* Appellant's Amended Petition for Post Conviction Relief Pursuant to the Post Conviction Relief Act (PCRA), 8/24/20, at Ex. B. In any event, during the PCRA hearing, Appellant questioned Attorney Beyer regarding his decision not to question Ceryak about the purported text messages:

> [Appellant:] Do you recall any text messages from discovery involving Miss Ceryak?
>
> [Attorney Beyer:] If I recall correctly, there were some text messages that [Appellant] may have requested that I introduce[. A]gain, I don't remember for sure, but I think it was a situation where I didn't see the benefit to those text messages. So the record could prove me wrong, but I don't recall us ever utilizing those.
>
> [Appellant:] And do you recall why there was no benefit?
>
> [Attorney Beyer:] I don't recall. I just remember talking to him about it and the context of the text message. I didn't see how they fit with any defense.

---

[12] We note Attorney Beyer, acting as Appellant's counsel, conducted the examination of Ceryak. *See* N.T., 2/20/17, at 80-102. Thus, Appellant may properly challenge his representation.

N.T., PCRA H'rg, at 13-14. Upon further questioning, Attorney Beyer stated that he believed he was "successful in eliciting testimony" from Ceryak that contradicted Hinton's testimony, and he "wouldn't want any additional information to come in to discredit" Ceryak. *Id.* at 17-18.

The PCRA court found Attorney Beyer's testimony demonstrated he had a reasonable basis for his "decision to forego use of the text messages." PCRA Ct. Op., 10/22/20, at 4. The court opined:

> The record reveals that Attorney Beyer succeeded in utilizing the testimony of Ms. Ceryak to cast doubt upon Mr. Hinton's testimony. Attorney Beyer was adamant in his testimony that this was his sole purpose in calling her as a witness, and that to probe further could potentially compromise her credibility. We see nothing deficient relative to this trial strategy.

*Id.*

We detect no basis upon which to disagree. Attorney Beyer testified that he reviewed the text messages and determined they did not support Appellant's defense. Although Appellant claims otherwise, as noted above, the purported text messages were not introduced into evidence at the PCRA hearing or properly authenticated. *See* Pa.R.E. 901(a) (eff. Mar. 18, 2013) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").[13] Thus, Appellant failed to

_____

[13] Rule 901 was amended in May of 2020, effective October 1, 2020, to include a provision addressing digital evidence. *See* Pa.R.E. 901(b)(11)(A)-(B)(i)-(ii) (explaining that direct evidence such as "testimony of a person with personal

*(Footnote Continued Next Page)*

prove counsel had no reasonable basis for his trial decision. *See Hand*, 252 A.3d at 1166.

Furthermore, we note that Appellant provides no argument concerning the third prong of the ineffectiveness test — prejudice. *See Hand*, 252 A.3d at 1166 (to establish counsel's ineffectiveness caused prejudice, an appellant must demonstrate "there is a reasonable probability that because of the act or omission in question, the outcome of the proceeding would have been different") (citation omitted). Indeed, Appellant argues only that this "claim has merit, and if his prior counsel had properly questioned Ms. Ceryak, that her testimony would have impeached the testimony of Commonwealth witness Richard Hinton." Appellant's Brief at 15. He does not explain how this alleged **additional** impeachment of Hinton would have changed the outcome of his trial. Thus, this claim fails.

In his third argument, Appellant maintains Attorney Beyer, while serving as standby counsel, was ineffective for "not permitting [Appellant] to call Johnstown Police Detective Doug Komar to testify as a witness to contradict conclusions made in Pennsylvania State Trooper Mark A. Galli's Investigative Report (dated December 12, 2016)." Appellant's Brief at 16. Preliminarily, we note Appellant acknowledged that the decision not to call Detective Komar was made while he was still representing himself. **See** N.T. PCRA Hr'g,

---

knowledge" or circumstantial evidence such as "identifying content" or "proof of ownership [of] a device" may be sufficient to "connect digital evidence with a person").

10/19/20, at 23. Thus, for that reason alone, we could conclude he is entitled to no relief. ***See Williams***, 196 A.3d at 1027 ("[W]e will not consider any ineffectiveness claims that arise from the period of self-representation."). Moreover, although Appellant attempts to argue standby counsel overstepped his bounds — which, in certain circumstances, may provide a basis for relief[14] — Appellant fails to demonstrate how standby counsel "**interfered** with [his] right of self-representation[.]" ***See id.*** at 1030 (emphasis added).[15]

In his penultimate issue, Appellant contends the PCRA court erred in denying his recusal requests. Appellant's Brief at 19. Appellant maintains: "Throughout these proceedings, [he] made several requests for the recusal of the Cambria County Bench due to various forms of bias displayed against him by the [t]rial [j]udge." ***Id.*** At the PCRA hearing, Appellant explained he "felt that [the judge] was being biased and unfair to the defense, and he kept taking the Commonwealth['s] word . . . because . . . they are officers of the court[.]" N.T., PCRA H'rg, at 19-20. He also claimed that the trial judge (who continued to preside over the PCRA proceedings) withheld DNA evidence in a 1991 case in which he was the prosecutor and "[t]hat's why he allowed the

_____

[14] ***See Williams***, 196 A.3d at 1030.

[15] During the PCRA hearing, Appellant testified that "the reason [he] did not call [Detective Komar] is because the judge gave [Attorney] Beyer authority to make the decision, and that was February the 17th, 2017, on page 25 and 26." N.T., PCRA H'rg, at 23. However, that citation refers to the Commonwealth's direct examination of its fingerprint expert. ***See*** N.T., 2/17/17, at 25-26. There is no mention of Detective Komar.

district attorney to get away with prosecutorial misconduct" throughout the proceedings. *Id.* at 33.

In order to obtain relief, a petitioner must demonstrate, *inter alia*, that a claim has not been waived. *See* 42 Pa.C.S. § 9543(a)(3). An issue is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b). Here, Appellant's recusal request is based upon, what he characterizes as, "various forms of bias displayed against him by the [t]rial [j]udge." Appellant's Brief at 19. Moreover, he states he made "several" recusal requests throughout the proceedings. *Id.* Thus, Appellant could have, and should have, raised this claim on direct appeal. His failure to do so waives it for our review.[16] *See* 42 Pa.C.S. § 9544(b).

Lastly, Appellant argues the trial court erred in denying relief on his claim that there was not "an ample and constitutionally acceptable number of African-Americans . . . in the Jury pool."[17] Appellant's Brief at 22. In fact,

---

[16] Appellant does not provide a record citation to his prior recusal requests, and our review has uncovered no written or oral motions seeking the court's recusal before or during trial. Nevertheless, even if Appellant did not request the trial court recuse itself, his claim — which focuses on the court's purported bias **during trial** — would still be waived. "[I]t is well-settled that a party seeking recusal or disqualification must raise the objection **at the earliest possible moment**, or that party will suffer the consequence of being time barred[.]" *Commonwealth v. Luketic*, 162 A.3d 1149, 1158 (Pa. Super. 2017) (citation omitted) (emphasis added).

[17] The criminal complaint lists Appellant's race as "Black." Commonwealth's Criminal Compliant, 7/18/15, at 1.

Appellant maintains there were only two African-Americans in his pool of 100 jurors, which constituted a "disproportionate number of minorities (specifically African-Americans) to choose from, [and] compromised [his] constitutional right to have a fair and impartial trial heard by a jury of his peers." *Id.* at 22-23.

We conclude this claim is also waived. As Appellant recognizes:

Mere under-representation of a minority group on a jury panel does not constitute unconstitutional discrimination *per se*. To show that a jury selection system is unconstitutional, appellant must show that **the procedures** as designed or implemented are likely to result in juries unrepresentative of a cross-section of the community, or that the procedures have continually failed to represent certain identifiable groups over a period of time.

*Commonwealth v. Baez*, 720 A.2d 711, 735 (Pa. 1998) (citations omitted and emphasis added). *See* Appellant's Brief at 23-25. Pennsylvania Rule of Criminal Procedure 625 outlines the procedure for challenging a jury array:

**(B) Challenge to the Array.**

(1) Unless opportunity did not exist prior thereto, a challenge to the array shall be made not later than 5 days before the first day of the week the case is listed for trial of criminal cases for which the jurors have been summoned and not thereafter, and shall be in writing, specifying the facts constituting the ground for the challenge.

(2) A challenge to the array may be made only on the ground that the jurors were not selected, drawn, or summoned substantially in accordance with law.

Pa.R.Crim.P. 625(B)(1)-(2).

Here, Appellant did not submit a written challenge to the jury array before *voir dire*, nor does he argue the opportunity to do so did not previously

exist. *See Commonwealth v. Brown*, 578 A.2d 461, 467 (Pa. Super. 1990) (finding challenge to jury array waived when counsel orally objected for the first time during the third day of jury selection). Furthermore, because he was acting as his own attorney at the time of jury selection, Appellant cannot claim counsel was ineffective for failing to file a Rule 625 motion. *See Williams*, 196 A.3d at 1027. Thus, his belated challenge to the array is waived.

Order affirmed.

Judge King joins the Memorandum.

Judge McLaughlin Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/08/2021