J-S38023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                         :          PENNSYLVANIA
                :
        v.             :
                :
                :
KYLE LAMAR BLACK          :
                :
        Appellant     :   No. 594 EDA 2022

Appeal from the PCRA Order Entered January 27, 2022
In the Court of Common Pleas of Bucks County
Criminal Division at CP-09-CR-0001750-2019

BEFORE:  KUNSELMAN, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:         **FILED DECEMBER 29, 2022**

Kyle Lamar Black (Appellant) appeals *pro se* from the order denying his timely first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

On May 23, 2018, Appellant and two accomplices robbed a minor female victim at gunpoint inside her home.  They threatened and tortured the victim, and Appellant forced the victim to perform oral sex on him.[1]  The Commonwealth charged Appellant with numerous crimes, and the case proceeded to trial in October 2019.  Appellant was represented by retained counsel, David Knight, Esquire (Trial Counsel).  The jury convicted Appellant of most charges, including robbery, burglary, indecent assault, simple assault,

_____

[1] The PCRA court provided a detailed recitation of the facts in its opinion.  **See** PCRA Court Opinion, 4/1/22, at 1-3.

and conspiracy; the jury acquitted Appellant of involuntary deviate sexual intercourse and sexual assault.[2]   On February 6, 2020, the trial court sentenced Appellant to an aggregate 11 - 22 years in prison, followed by 10 years of probation.  Appellant did not file post-sentence motions or a direct appeal.

On January 12, 2021, Appellant timely filed the instant *pro se* PCRA petition.  The PCRA court appointed counsel (PCRA Counsel), who filed an amended PCRA petition on March 19, 2021.  PCRA Counsel raised a single claim that Trial Counsel was ineffective for failing to file a direct appeal. Amended PCRA Petition, 3/19/21, at ¶¶ 12-15.

The PCRA court held an evidentiary hearing on August 9, 2021. Appellant, Trial Counsel, Appellant's father, and Correctional Officer Ara Kimbrough (Lieutenant Kimbrough) testified.  Pertinently, Appellant and his father claimed they repeatedly asked Trial Counsel to file a direct appeal prior to the expiration of the appeal period, but Trial Counsel ignored them.  N.T., 8/9/21, at 9-14, 40-48.  In support, Appellant attached to his amended PCRA petition two handwritten letters which he purportedly sent to Trial Counsel after sentencing.  Amended PCRA Petition, 3/19/21, Exhibit A (letter dated February 7, 2020 (February 7 letter)), and Exhibit B (letter dated March 28, 2020 (March 28 letter)); *see also* PCRA Hearing Exhibits D-1 and D-2 (same).

---

[2] The PCRA court explained the verdicts in its opinion.  **See** PCRA Court Opinion, 4/1/22, at 3.

- 2 -

Conversely, Trial Counsel testified that neither Appellant nor his father asked him to file an appeal. N.T., 8/9/21, at 24-32; *see also id.* at 31 (Trial Counsel testifying that during a phone call with Appellant's father after sentencing, "my understanding was … that they did not want to file an appeal."). On cross-examination, Trial Counsel denied seeing the February 7 letter or March 28 letter prior to the PCRA proceedings. *Id.* at 34, 38. Trial Counsel acknowledged he had discussed the appellate process with Appellant. *Id.* at 26-27, 35. Trial Counsel informed Appellant that if he elected to appeal, Trial Counsel would file a notice of appeal, but Appellant would need to retain a different attorney to represent him on appeal, as Trial Counsel did not handle appeals. *Id.* Trial Counsel referred Appellant to his former law partner, John Fioravanti, Esquire (Attorney Fioravanti). *Id.* at 27, 37.

On January 27, 2022, the PCRA court denied Appellant's PCRA petition. Appellant timely filed a *pro se* notice of appeal,[3] as well as a separate petition requesting permission to proceed *pro se* pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). The PCRA court conducted a **Grazier** hearing in accordance with this Court's directive on May 19, 2022, and granted

---

[3] Appellant filed his notice of appeal at docket 605 EDA 2022. Four days later, PCRA Counsel filed a notice of appeal at the instant docket, 594 EDA 2022. Appellant thereafter filed in this Court an application to consolidate the appeals. On May 6, 2022, we dismissed the appeal at 605 EDA 2022 as duplicative and denied Appellant's application to consolidate as moot.

Appellant leave to proceed *pro se*. The PCRA court did not order Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b).

Appellant presents two questions for review:

1. [Wa]s [Trial C]ounsel ineffective *per se* in failing to appeal [Appellant's] case, thereby abandoning his client and completely depriving [Appellant] of the right to appeal?

2. Did the PCRA Court abuse its discretion in failing to find [T]rial [C]ounsel ineffective in failing to file an appeal, and/or take the necessary steps to protect [Appellant's] right to appeal?

Appellant's Brief at iv. We address Appellant's issues together.

"Our standard of review for issues arising from the denial of PCRA relief is well-settled. We must determine whether the PCRA court's ruling is supported by the record and free of legal error." ***Commonwealth v. Spotz***, 171 A.3d 675, 678 (Pa. 2017). "We will not disturb findings of the PCRA court that are supported by the certified record." ***Commonwealth v. Bedell***, 954 A.2d 1209, 1211 (Pa. Super. 2008) (citation omitted).

Regarding ineffectiveness claims, Pennsylvania law presumes that counsel was effective, and a PCRA petitioner bears the burden of proving otherwise. ***Commonwealth v. Brown***, 196 A.3d 130, 150 (Pa. 2018).

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)).

To establish a claim of ineffectiveness, a PCRA petitioner must plead and prove three prongs:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. **Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from **Commonwealth v. Pierce**, 527 A.2d 973, 975-76 (Pa. 1987)). … Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Finally, because a PCRA petitioner must establish all the **Pierce** prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

**Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015) (citations modified); **see also Commonwealth v. Lesko**, 15 A.3d 345, 380 (Pa. 2011) ("When evaluating ineffectiveness claims, judicial scrutiny of counsel's performance must be highly deferential." (citation omitted)).

Appellant argues the PCRA court abused its discretion in rejecting his claim that Trial Counsel rendered ineffective assistance by failing to file a requested direct appeal. **See** Appellant's Brief at 1-9; **see also id.** at 6 ("[Appellant] did, in fact, state that he wanted to file an appeal[;] however, [Trial C]ounsel felt that he needed to talk to [Appellant's] father to see if his father was willing to pay for that service."). Appellant contends that at the PCRA hearing, Trial Counsel "basically admits that he abandoned" Appellant, and cites the following excerpt from PCRA Counsel's cross-examination of Trial Counsel:

Q. [] My understanding from your direct testimony was when you left your visit with [Appellant] in jail, he had not directed you to file an appeal, but you said you would speak to his family?

A. Yes.

Q. When you left, did you think it was up to [Appellant's] family to decide whether to file the appeal? How did you leave that with your client?

A. I thought … they spoke by phone at least, [Appellant] and [his father,] and [Appellant's] mother, I am sure, also. So I am sure it was a family decision as to what they wanted to do. [Attorney] Fioravanti's name and number I gave him. [Appellant and his parents] knew [Attorney Fioravanti from prior experience.] And that is pretty much the last I heard, except I think at one point in time I did receive a phone call, and I might have received a card or a letter from [Appellant's] parents.

Q. When you had this phone call with his -- I believe you said it was [Appellant's] father that you spoke with?

A. Yes.

Q. Was that something that you initiated or did he contact you?

A. I believe he called me.

N.T., 8/9/21, at 35-36; *see also* Appellant's Brief at 2-3.

Appellant further asserts that Trial Counsel "never attempted to find out" whether Appellant wanted to appeal. Appellant's Brief at 3; *see also id.* at 6 (arguing Trial Counsel "never stated that either [Appellant] or [Appellant's] father specifically told [counsel] **not** to file an appeal." (emphasis in original)). Finally, Appellant contends Trial Counsel improperly "did whatever he could to discourage the filing of an appeal, including stating that there were no appealable issues and stating that it would cost additional

money," and "tried to pawn this case off on [A]ttorney [] Fioravanti…." ***Id.*** at 8-9.

The law is well-settled. The United States Supreme Court has held:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

***Roe v. Flores-Ortega***, 528 U.S. 470, 480 (2000). Counsel's unexplained failure to file a requested direct appeal constitutes ineffective assistance *per se*, such that the petitioner is entitled to reinstatement of direct appeal rights *nunc pro tunc* without establishing prejudice. ***Commonwealth v. Lantzy***, 736 A.2d 564, 572 (Pa. 1999). However, "[b]efore a court will find ineffectiveness of trial counsel for failing to file a direct appeal, [an a]ppellant must prove that he requested an appeal and that counsel disregarded this request." ***Commonwealth v. McGarry***, 172 A.3d 60, 71 (Pa. Super. 2017) (citation omitted).

Upon review, we find the PCRA court's analysis persuasive. The PCRA court explained:

> In the instant case, there is no dispute that Trial Counsel discussed the appellate process with [Appellant] (N.T., 8/9/21, at 7, 9, 25, 27, 33-35) and that the costs associated with that appeal were part of those discussions[.] ***Id.*** at 9, 30-32. There is also no dispute that Trial Counsel was aware of his obligation to file an appeal if requested to do so to preserve [Appellant's] appellate rights. ***Id.*** at 35. Trial Counsel was privately retained. ***Id.*** at 7.

Both Trial Counsel and [Appellant] testified that Trial Counsel told [Appellant] that, if he chose to appeal, Trial Counsel would file the notice of appeal, but that [Appellant] would then have to retain another private attorney to represent him on appeal.[FN2] *Id.* at 19. Both Trial Counsel and [Appellant] testified that Trial Counsel referred [Appellant] to … [Attorney] Fioravanti … for that purpose. *Id.* at 9-10, 18-19, 27, 35.

> [FN2] Trial Counsel also advised [Appellant] that he could apply for public defender representation if he could not afford to retain private counsel. *Id.* at 35.

**The sole dispute is whether [Appellant] instructed Trial Counsel to file an appeal.** [Appellant] testified that he instructed Trial Counsel to file an appeal immediately after sentencing while they were still in the courtroom (*id.* at 8-9), in [the February 7] letter [] he sent from Bucks County Correctional Facility … (*id.* at 11-12; PCRA Exhibit D-1), and again [in person] during a prison visit with Trial Counsel on February 11, 2020. N.T., 8/9/21, at 9-10. [Appellant] testified that he wrote a second letter[, *i.e.*, the] March 28 [letter,] while housed at a state correctional facility[,] in which he inquired about the status of his appeal. N.T., 8/9/21, at 13-14; PCRA Exhibit D-2. Trial Counsel testified that [Appellant] did not ask him to file an appeal while they were in the courtroom on February 6 (N.T., 8/9/21, at 34), that he did not receive the February 7 letter or the March 28 letter from [Appellant] (*id.* at 28, 34, 38), and that [Appellant] never mentioned the February 7 letter or asked him to file an appeal during the February 11[, 2020,] prison visit[.] *Id.* at 28, 34, 38.

**This court found Trial Counsel's testimony to be credible.** Trial Counsel is an experienced trial attorney who specializes in criminal law. He has been practicing criminal law since 1985. Criminal matters constitute 95 percent of his criminal practice. *Id.* at 33. Given the effort Trial Counsel took to make sure [Appellant] and his family understood his appellate rights (*id.* at 29-31, 52)[FN3] and understood [Appellant's] options regarding legal representation on appeal (*id.* at 35), it makes little sense that Trial Counsel would simply choose not to file a notice of appeal if he had been requested to do so. Moreover, Trial Counsel's testimony that he never received any letters regarding an appeal from [Appellant] was supported by the fact that the original letters were not produced at the PCRA Hearing; presumably because they were not in the case file Trial Counsel

- 8 -

turned over to PCRA Counsel. *See id.* at 28, 34. The only evidence produced regarding the letters was [Appellant's] testimony and photocopies of what were purported to be carbon copies of two handwritten letters. PCRA Exhibits D-1, D-2. There was no evidence from any independent source to establish when each document was created and if and when they were ever mailed.

> [FN3] Trial Counsel met with [Appellant's] father and mother following sentencing and spoke with [Appellant's] father by telephone before the appeal period lapsed. *Id.* at 29-31, 52.

**This court found [Appellant's] testimony to be of questionable reliability** for several reasons. First, **[Appellant's] account of what occurred following his conviction was contradicted by other evidence.** [Appellant] testified that he wrote the first letter to Trial Counsel while housed at Bucks County Correctional Facility on February 7, 2020. *Id.* at 11-12; PCRA Exhibit D-1. Lieutenant [] Kimbrough, the administrative lieutenant responsible for overseeing records and reception at Bucks County Correctional Facility, testified that **on the date the [February 7] letter was allegedly written, [Appellant] was on restrictive status at the prison and had no access to pen and paper**. N.T., 8/6/21, at 62, 66-68; PCRA Exhibit C-2. [Appellant] also testified that he did not learn that the appeal had not been filed until almost a year after he was sentenced. N.T., 8/6/21, at 13. That testimony was contradicted by [Appellant's] father[,] who testified he had informed [Appellant] that he had spoken to Trial Counsel prior to the expiration of the appeal period and that Trial Counsel had not filed an appeal. *Id.* at 60. [Appellant's] testimony that his family was also communicating with Trial Counsel at the same time he was allegedly attempting to communicate with counsel regarding an appeal raises the implication that [Appellant's] parents were acting on his behalf regarding the appeal. *Id.* at 12. However, Trial Counsel testified that [Appellant's] father did not direct him to file an appeal (*id.* at 38) and had instead informed him that he was not going to spend more money for an appeal. *Id.* at 30. Although [Appellant's] father's testimony was confused and inconsistent, to the extent that it can be relied on, it established that he was not acting as [Appellant's] representative regarding his communications with Trial Counsel. [Appellant's father] testified that his son was a "young adult" and that he was handling

everything regarding the potential appeal. *Id.* at 41, 53.

Second, **[Appellant's] testimony was internally inconsistent.** [Appellant] testified that he was told by Trial Counsel that "[counsel] had to investigate the issues of [Appellant's] case" and then he would file the appeal. *Id.* at 9. [Appellant] later testified that Trial Counsel told him that "he was going to file the notice of appeal that day." *Id.* at 10. [Appellant's] testimony that he believed Trial Counsel was going to "investigate the issues" to be raised on appeal was also contradicted by [Appellant's] admission that he knew [] Trial Counsel was only going to file the notice of appeal and that a separate attorney would be needed to handle all other aspects of the appeal. *Id.* at 22.

Finally, **[Appellant's] conduct following his conviction was inconsistent with his stated intention of pursuing an appeal.** [Appellant] testified that he told [Trial Counsel] to file an appeal and that [Appellant] knew, once that appeal was filed, that he would have to retain another attorney or obtain public defender representation to handle it. Despite having been given [Attorney] Fioravanti's contact information, [Appellant] did not attempt to contact him for almost a year. *Id.* at 19-20. [Appellant] never retained an attorney. *Id.* at 22. [Appellant] presented no evidence that he attempted to retain any other attorney or that he applied for a public defender.

**The content of the February 7 letter is also questionable given the time frame it was purportedly written.** The content of the February [7 letter] indicates that [Appellant] was dissatisfied with Trial Counsel's handling of the case. PCRA Exhibit D-1. In his testimony, Trial Counsel made it clear that, contrary to the sentiment expressed in that letter, [Appellant] did not raise any of the same issues with him and expressed no complaints about [Trial Counsel's] representation when [Appellant] met with him four days later. [Trial Counsel] testified that when he met with [Appellant] on February 11 [2020], [Appellant] was "very excited" that he was acquitted on the most serious sex offenses and thanked [Trial Counsel] "numerous times." N.T., 8/9/21, at 25, 34-35. Given the verdict when considered in light of the Commonwealth's evidence, Trial Counsel's description of [Appellant's] state of mind makes more sense than the more antagonistic relationship between attorney and client the handwritten document implies.

- 10 -

> **Having made credibility findings against [Appellant] and in favor of Trial Counsel regarding whether [Appellant] directed Trial Counsel to file an appeal[,] and having concluded that the authenticity of the documents presented was questionable, this court found that [Appellant] did not meet his burden of proving by a preponderance of the evidence that he directed Trial Counsel to file an appeal and that Trial Counsel ignored that request.**

PCRA Court Opinion, 4/1/22, at 5-9 (emphasis added; footnotes in original; some citations modified).

The PCRA court's reasoning is supported by the record and law. *See*, *e.g.*, *Commonwealth v. Martin*, 5 A.3d 177, 197 (Pa. 2010) (the factual findings of a PCRA court, "which hears evidence and passes on credibility of witnesses, should be given great deference"), and *Commonwealth v. Mitchell*, 105 A.3d 1257, 1265 (Pa. 2014) (a "PCRA court's credibility determinations, when supported by the record, are binding on this Court[.]" (citation omitted)).  Accordingly, we conclude that the PCRA court did not err or abuse its discretion in rejecting Appellant's claim of Trial Counsel's ineffectiveness.  *See* PCRA Court Opinion, 4/1/22, at 5-9.

Order affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 12/29/2022*